[Crim. No. 4680. In Bank. Dec. 3, 1946.]

In re JOHN FRANCIS McVICKERS, on Habeas Corpus.

John Francis McVickers, in pro. per., for Petitioner.

Robert W. Kenny, Attorney General, Jess Hession, Assistant Attorney General, and James O. Reavis, Deputy Attorney General, for Respondents.

SCHAUER, J.—Petitioner, by application for the writ of habeas corpus, seeks review of the adjudication or finding that he, "having been previously three times convicted, upon charges separately brought and tried, and having served separate terms therefor in state and/or federal penitentiaries for crimes enumerated in Section 644 of the Penal Code . . ., is an habitual criminal under the provisions of Section 644 of the Penal Code." For the reasons hereinafter expressed we have concluded that a prisoner can, on application for habeas corpus, attack and secure appropriate relief from such an adjudication of habitual criminal status where it appears from the facts shown, either upon the face of the record or by satisfactory proof, that as a matter of law a prior conviction upon which the adjudicated status depends is of a crime which does not meet the definition of any offense enumerated in section 644. From the showing here it appears as a matter of law that petitioner in truth has been not *three* times but only *twice* convicted of felonies enumerated in section 644 of the Penal Code.

The pertinent provisions of the Penal Code under which petitioner was adjudged an habitual criminal, as they read at the time petitioner committed the primary offenses of which he was convicted (violations of the state narcotic laws) and at the time judgment against petitioner was entered, were as follows: Section 644 (as am. Stats. 1935, p. 1699): "Every person convicted in this state of any felony who shall have been previously twice convicted upon charges separately brought and tried, and who shall have served separate terms therefor in any state prison and/or federal penitentiary, either in this state or elsewhere, of the crime of . . . burglary, . . . grand theft, . . . forgery, . . . shall be adjudged an habitual criminal and shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole until he shall have served a minimum of at

least twelve years. Every person convicted in this state of any felony who shall have been previously three times convicted, upon charges separately brought and tried, and who shall have served separate terms therefor in any state prison and/or federal penitentiary, either in this state or elsewhere, of the crime of . . . burglary, . . . grand theft, . . . forgery, . . . shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole . . .'' Section 668 (as am. Stats. 1927, p. 1065) : ''Every person who has been convicted in any other state, government, or country, of an offense which, if committed within this state, would be punishable by the laws of this state by imprisonment in the state prison, is punishable for any subsequent crime committed within this state in the manner prescribed in sections 644, 666 and 667, and to the same extent as if such prior conviction had taken place in a court of this state.''

It is settled that ''In order to adjudge a defendant an habitual criminal the test is not whether he shall have been twice convicted of any felonies, but whether he shall have been twice convicted of *felonies enumerated in section 644 of the Penal Code.*'' (Italics added.) (*People* v. *Lohr* (1938), 28 Cal.App.2d 397, 399 [82 P.2d 615].) It is also settled that the crimes enumerated in section 644 must be understood to be crimes *as defined in the laws of California* and, if committed elsewhere, regardless of the names by which they may be designated, *must in their substance come within California's definitions of the enumerated crimes.* (*People* v. *McGee* (1938), 24 Cal.App.2d 391, 394 [75 P.2d 533] ; *People* v. *Morrison* (1938), 26 Cal.App.2d 616, 618 [80 P.2d 94] ; *People* v. *Lohr* (1938), *supra; People* v. *McChesney* (1940), 39 Cal.App.2d 36, 41 [102 P.2d 455] ; *In re Taylor* (1944), 64 Cal.App.2d 47, 50 [148 P.2d 143] ; *In re Connell* (1945), 68 Cal.App.2d 360, 363 [156 P.2d 483] ; *In re Howard* (1945), 69 Cal.App.2d 164 [158 P.2d 408].) Petitioner seeks to show that two of the prior convictions which formed the basis of the adjudication that he is an habitual criminal—one a conviction of an offense against the laws of Utah and one a conviction of an offense against the laws of the United States— were of offenses the adjudicated elements of which did not amount to ''crimes enumerated in section 644'' as defined by the laws of California.

The record of petitioner's conviction of the primary or

substantive offenses shows that, by information filed January 6, 1938, petitioner was charged in three counts with violation of the state narcotic laws. As to the three asserted prior convictions of felony and service of a term of imprisonment for each, the record shows that the alleged prior convictions were for "Grand Larceny, a felony," in Utah; "burglary, First Degree, a Felony," in Nevada; and "Violation of Section 218 of the Criminal Code of the United States of America [nine counts of forging postal money orders], a felony." Petitioner pleaded not guilty to counts one and two, guilty to count three, and admitted the three prior convictions as charged. He was tried and found guilty of the primary offenses charged in counts one and two. Thereafter, upon arraignment for judgment, he moved that he be adjudged "not an habitual criminal" on the ground that his was one of those "exceptional cases" in which "the court may, in its discretion, provide that the defendant is not an habitual criminal." (Pen. Code, § 644.) The motion was denied. Judgment of conviction and adjudication of habitual criminality was entered. Petitioner made no motion in arrest of judgment or for a new trial and did not appeal.

After the time to appeal had expired petitioner moved the trial court to vacate or modify the judgment. Petitioner's attack on the judgment was directed only at the determination as to prior convictions. His motion was denied and he appealed. The order denying his motion was affirmed. (*People* v. *McVicker* (1940), 37 Cal.App.2d 470 [99 P.2d 1110].) Petitioner's principal contentions on that appeal were substantially the same as those now advanced, namely, that the Utah conviction and the federal conviction were not in their actual substance such as to constitute any basis for lawful adjudication of habitual criminality. The District Court of Appeal relied on the following language from *People* v. *Moore* (1935), 9 Cal.App.2d 251, 255 [49 P.2d 615], quoted with approval in *People* v. *Lumbley* (1937), 8 Cal.2d 752, 760 [68 P.2d 354] : "We fail to see how the position of defendant in this proceeding [in effect, a petition for writ of error *coram nobis*] is any different from that of a person who pleads guilty to a crime believing in fact that he was guilty of the same at the time of his plea, when, as a matter of law, the facts could not establish his guilt. In the latter situation a defendant would have the undoubted right to make a motion to change his plea. [Citations.] If, however, the defendant

omits to do so, and the time has expired for the exercise of any of the statutory remedies after judgment, which might be invoked to cure the situation, and the judgment becomes final, there would be no further legal recourse by any form of judicial review. The same, we believe, is true in this case.'' The language quoted from the opinion of the District Court of Appeal can have no application to this habeas corpus proceeding, for that court went on to say (at p. 475 of 37 Cal. App.2d and in accord with intimations in *People* v. *Lumbley* (1937), *supra,* 8 Cal.2d 752, 755, 762), ''If the said two 'priors' were improperly invoked . . . then upon the arrival of the time when appellant [petitioner McVickers] would be entitled to release from confinement for the primary offenses, the legality of his continued or prolonged confinement solely because of the prior convictions can be tested on *habeas corpus.''* Therefore, regardless of whether we now view the above quoted excerpts from the opinion of the District Court of Appeal as being correct or erroneous in law, and irrespective of whether pronouncements in an opinion rendered on an appeal should always be regarded as law of the case, binding in a subsequent habeas corpus proceeding, it appears here that the judgment of the District Court of Appeal was based substantially upon its holding that petitioner, in due time, would be entitled to have ''the legality of his prolonged confinement solely because of the prior convictions . . . tested on *habeas corpus,''* and under such circumstances he certainly is not to be denied relief solely on the ground that the holding by the District Court of Appeal as to procedure was erroneous. Independently of the holding of the District Court of Appeal we are, however, for reasons hereinafter set forth, satisfied that the remedy of habeas corpus is open to petitioner.

The arguments against permitting a collateral attack, by application for habeas corpus, on a determination that the petitioner is an habitual criminal are set forth in *Thompson* v. *Harris* (1944), 107 Utah 99 [152 P.2d 91, 92] (where ''the information affirmatively disclosed that the two previous convictions upon which the state would rely to show that Thompson was an habitual criminal were not sufficient to support a conviction under the Habitual Criminal statute''). It is there said that the writ of habeas corpus can be used ''to correct jurisdictional errors and to determine whether or not the petitioner had been deprived of any constitutional right.

Except in these two respects, errors in proceedings before a trial court must be corrected by appeal. One of the basic difficulties inherent in a contrary holding is the question of where to draw the line. Somewhere and sometime there must be an end to litigation. The writ of habeas corpus must not be used to discover and correct all errors which might creep into a criminal trial. . . . We recognize that some errors are more prejudicial to a defendant than are others, but if habeas corpus is to be used to correct error, where can we draw the line? . . . We believe that the only sound line that can be drawn is to restrict the use of the writ of habeas corpus to the correction of jurisdictional errors and to errors so gross as to in effect deprive the defendant of his constitutional substantive or procedural rights.''

█ The courts of this state have uniformly permitted more extensive use of the writ of habeas corpus to review adjudications of habitual criminality than would be possible under the view of the Utah court quoted above. We are satisfied, for the reasons hereinafter set forth, that the writ can consistently be made available to a prisoner who has been adjudged an habitual criminal although in truth and fact he is not, without so enlarging its scope as to make it in effect (as suggested in the above quotation) a writ of error to review the correctness of a conviction. It is important to note that *petitioner here raises no question as to the validity or correctness of a judgment of conviction. His attack is directed only against a determination of facts on which depend the length of time during which he can be legally imprisoned and the possibility of his being released on parole.*

█ The so-called adjudication of habitual criminal status is not and cannot be an element of adjudicated guilt, nor is it, properly speaking, a part of the judgment of conviction. Despite language of some cases (*People* v. *Delany* (1874), 49 Cal. 394; *People* v. *Coleman* (1904), 145 Cal. 609, 612 [79 P. 283]) to the contrary, statutes which provide for increased punishment of those who have previously offended do not create specific, aggravated crimes. █ Section 644 of the Penal Code does not create a substantive offense, habitual criminality; rather it provides for more severe punishment, proportionate to their persistence in crime, of those who have proved immune to lesser punishment. (24 C.J.S. 1143, § 1958.) That prior convictions are not elements of a substantive offense is necessarily so under the reasoning of the

cases which have upheld the constitutionality of section 644 against the attack that it is *ex post facto* as applied to convictions suffered prior to its enactment. ''In such case, it is the second or subsequent offense that is punished, not the first.'' (Cooley on Constitutional Limitations, 8th ed., p. 553, quoted and relied on in *In re Rosencrantz* (1928), 205 Cal. 534, 540 [271 P. 902], and cases there cited.) Similarly, as to the contention that punishment under a law which provides more severe punishment because of a prior conviction places the defendant twice in jeopardy for the first offense, it is held that ''he is not again punished for the first offense, but the punishment for the second is increased.'' (*People* v. *Stanley* (1873), 47 Cal. 113, 116 [17 Am.Rep. 401].) That prior convictions are not elements of a substantive offense likewise appears from section 1158 of the Penal Code, which requires the jury to find separately on the issue of prior convictions, and from such cases as *People* v. *Eppinger* (1895), 109 Cal. 294 [41 P. 1037], which holds that a general verdict, ''guilty as charged,'' must be treated as a finding against defendant as to the basic offense alleged but in favor of defendant as to alleged prior convictions.

From the foregoing discussion it follows that formal adjudication that a prisoner is an habitual criminal does not constitute an adjudication of guilt. It involves merely the determination of certain facts, all of which are matters of record, and, ordinarily, the declaration of a conclusion from such facts. The facts, rather than the conclusion, operate to prolong the prisoner's confinement and limit his right to parole. Although this court has said that the trial court should in proper cases ''formally adjudge'' that defendant is an habitual criminal, it has held that such formal adjudication is unnecessary. (*In re Boatwright* (1932), 216 Cal. 677, 683 [15 P.2d 755] ; *People* v. *Vaile* (1935), 2 Cal.2d 441, 444 [42 P.2d 321] ; see 24 C.J.S. 1174, § 1971, subd. b.) It is, therefore, obvious that a determination of habitual criminal status, even though referred to as an adjudication, does not involve the validity or finality of a judgment of conviction, as such, but relates only to the length of the term of imprisonment and the right to parole, and, hence, an attack on the adjudication of habitual criminal status is not an attack on the judgment of conviction.

It is a part of the philosophy of the indeterminate sentence law and our whole penological system that, within prescribed

limits, the length of terms of imprisonment and rights of parole shall be subject to redetermination from time to time. (See Pen. Code, §§ 1168, 3020, 3025, 3040, 3053, 3060, 3065.) The trend of modern theory on the subject is definitely away from attaching to judgments of conviction absolute finality insofar as the length of terms of imprisonment is concerned. The judgment of conviction, as such, retains full finality but the matter of length of terms of imprisonment and other elements of the penological process relating to punishment, rehabilitation, supervision, etc., are being largely severed from direct, specific, or final control by the judgment of conviction. It seems, therefore, that, if we are not by established procedural law precluded, it will be more in harmony with the spirit and purpose of our substantive criminal law as it is intended to operate after conviction, to regard an adjudication of habitual criminality as having somewhat less finality and sanctity than a judgment of conviction. It will likewise be more in harmony with the policy of law if we can entertain petitioner's application on its merits rather than dismiss it on technical grounds.

Since the finding or adjudication as to a former conviction and habitual criminal status is severable from the proceedings and judgment on the primary offense (see 8 Cal. Jur. 646, § 617) no violence is done to the finality of the judgment of conviction by permitting a collateral attack on the determination as to a prior conviction. The fact of a prior conviction is not ordinarily difficult of proof; it can be shown by certified copies of the indictment or information and the judgment. Service of a term of imprisonment can be shown by prison records. Nor is the precise extent of that which is res judicata, or the legal effect, of a foreign prior conviction difficult of ascertainment; both can be determined by examination of the pleadings and consideration of the judicially noticed law of the other state in the light also of the law of this state. The language of section 668 of the Penal Code and the decisions hereinabove cited denote the limits of inquiry proper either on the trial or on review: whether the prisoner has been "convicted in another state" and served a term of imprisonment therefor in a state prison or a federal penal institution, and whether the essential elements of the offense of which he has been *convicted* are the same or substantially the same as those required by California law to constitute an offense enumerated in section 644. Therefore,

to permit reexamination of adjudications as to prior convictions on applications for habeas corpus where otherwise proper, does not place upon the courts the burden of considering the uncertain testimony of witnesses as to events long past.

The extent of the growth of the function of habeas corpus collaterally to attack judgments of conviction in this state is illustrated by comparing with recent decisions (e. g., *In re Connor* (1940), 16 Cal.2d 701, 712 [108 P.2d 10] ; *In re Bell* (1942), 19 Cal.2d 488 [122 P.2d 22], and cases there cited; *In re Byrnes* (1945), 26 Cal.2d 824, 827 [161 P.2d 376]) the case of *Ex parte Max* (1872), 44 Cal. 579, 581, which pointed out the "obvious distinction between the office of a writ of error or an appeal, on the one hand, and a writ of habeas corpus upon the other." Petitioner Max, as it appeared from the judgment roll, was found guilty of a crime which amounted to a *misdemeanor;* he was adjudged guilty of a *felony* and sentenced to imprisonment in the state prison; it was held that this was mere error which could not be inquired into on habeas corpus. In contrast is the declaration in *In re Byrnes* (1945), *supra,* at page 827, that "It is well settled that a writ of habeas corpus ordinarily may not be employed as a substitute for an appeal [citation], yet the scope of inquiry in such proceedings has been broadened rather than narrowed [citation], and the writ may be used to present questions of law that cannot otherwise be reviewed or are *so important as to justify an extraordinary remedy* [citation]." (Italics added.) Likewise, in *In re Bell* (1942), *supra,* at page 494, we find the statement, "There are other situations in which habeas corpus is used, not as a test of jurisdiction, but to review a question of law that cannot otherwise be raised or is so important as to render the ordinary procedure inadequate."

Corresponding to the development of habeas corpus as a means of attack on a judgment of conviction has been a broadening of the scope of the writ as a means of attack on an adjudication of habitual criminal status. The cases which have broadened this function of the writ present a logical and chronological line of development, but they do not expressly recognize such development nor do they state grounds for a distinction between the scope of habeas corpus to attack collaterally a judgment of conviction and its scope to attack collaterally an adjudication of habitual criminality. Without

summarizing this line of cases in detail it may be appropriate to note that when the scope of the writ was first defined in this state, with emphasis on the rules that the inquiry was limited to questions of jurisdiction and the validity on its face of the process and that questions of fact could never be retried (*Ex parte Bird* (1861), 19 Cal. 130; *Ex parte Gibson* (1867), 31 Cal. 619, 624, 628 [91 Am.Dec. 546]; *Ex parte McCullough* (1868), 35 Cal. 97, 101; *Ex parte Max* (1872), *supra,* 44 Cal. 579, 581), statutes providing for increased punishment of previous offenders were not a part of our law. It is understandable that the courts may have felt somewhat handicapped by tradition and therefore somewhat uncertain as to theory in applying a remedy as ancient as habeas corpus to a situation arising under the comparatively modern habitual criminal and indeterminate sentence laws. Nevertheless, this court and the District Courts of Appeal have not hesitated to inquire into questions of so-called "mere error" going to the whole basis of the determination when an adjudication of a prior conviction (habitual criminal status) was attacked on habeas corpus. (*In re Rosencrantz* (1931), 211 Cal. 749 [297 P. 15]; *In re Brady* (1936), 5 Cal.2d 224, 226 [53 P.2d 945]; *People* v. *McVicker* (1940), *supra,* 37 Cal.App.2d 470, 475; *In re Taylor* (1944), *supra,* 64 Cal. App.2d 47, 50; *In re Connell* (1945), *supra,* 68 Cal.App.2d 360; *In re Howard* (1945), *supra,* 69 Cal.App.2d 164; *In re Thompson* (1946), 72 Cal.App.2d 747 [165 P.2d 533].) In *People* v. *Lumbley* (1937), *supra,* 8 Cal.2d 752, 755, 762, it was intimated that the question of the effect of a pardon, shown by evidence outside the record, upon the correctness of an adjudication of prior conviction and service of a term therefor, might be raised on habeas corpus.

Furthermore, it should be noted, in a habeas corpus proceeding we are not by our statute or by recent judicial holdings necessarily confined under all circumstances to that which appears on the face of the record. Section 1484 of the Penal Code provides that on such proceedings the petitioner may "allege *any fact* to show either that his imprisonment or detention is unlawful, or that he is *entitled to his discharge.* The court or judge must thereupon proceed in a summary way to hear such proof as may be produced against such imprisonment or detention, or in favor of the same, and to dispose of such party *as the justice of the case may require. . . .*" (Italics added.) ▆ Habeas corpus is essentially a collat-

eral attack. (4 Cal.Jur. 1021, § 3; 13 Cal.Jur. 217, § 3.) It is specifically held in *In re Bell* (1942), *supra,* 19 Cal.2d 488, 501, that ''A petitioner seeking habeas corpus . . . is not confined to the face of the record in attempting to sustain the burden of proving that his conviction was in violation of his constitutional rights. The courts of both the United States and California have declared that the remedy of habeas corpus permits an examination not only of the actual evidence introduced at petitioner's trial but of any necessary additional evidence bearing upon the infringement of petitioner's constitutional rights. [Citations.] This examination is made, not to pass upon the sufficiency of the evidence to support the verdict, but to determine what the verdict actually was, so that the court may decide whether it violates constitutional guaranties.'' Again, in *In re Connor* (1940), *supra,* 16 Cal. 2d 701, 712, the rule was stated: ''The scope of inquiry on *habeas corpus* in this state may, . . . under exceptional circumstances, extend over the entire course of proceedings in the lower courts [citations], and may embrace additional evidence received by this court either directly or under an order of reference.'' If a judgment of conviction, with its greater historical finality, is upon any ground open to the collateral attack of habeas corpus on evidence dehors the record it would seem that the ancillary adjudication of habitual criminality (requiring merely a consideration of documentary and record evidence) should be vulnerable to the attack of habeas corpus, whether on evidence dehors the record or otherwise, on the ground (as sometimes phrased) that the trial court lacked ''jurisdiction'' to adjudicate the status where the uncontradicted evidence is, as a matter of law, inadequate to support the adjudication. Whether the legal ground of the attack be designated as a ''lack of jurisdiction'' or as a question of law ''so important as to justify an extraordinary remedy'' the impelling reasons and the conclusion would seem to be the same.

In addition to the objections, hereinabove discussed (that upholding the decisions of the cases which have broadened the historical scope of habeas corpus review might result in a situation where no judgment would be final and habeas corpus would be available to retry all issues of fact on which final judgments of conviction are based), other objections to the use of the writ in cases such as this have been suggested. Our attention is called to *People* v. *Stone* (1945), 69 Cal.App.2d

533, 536 [159 P.2d 701] (recently quoted with approval by this court in *In re Gilliam* (1945), 26 Cal.2d 860, 866 [161 P.2d 793]). It is there said, ''The confession of a prisoner at the bar of his guilt as charged as well as of the truth of the allegation of prior convictions is, in the absence of insane delusions, most satisfactory evidence upon which to convict and will support a judgment that he is an habitual criminal. [Citations.]'' Further, our attention is called to section 1025 of the Penal Code, which provides that a defendant's admission of a prior conviction ''must, unless withdrawn by consent of the court, be conclusive of the fact of his having suffered such previous conviction in all subsequent proceedings.'' These quotations from case and statute certainly can have no application to a situation like the present, where the fact (the prior conviction) charged and admitted is as a matter of law, upon the face of the pleading, wholly insufficient to form the basis for an adjudication of habitual criminality.

■ Sections 644 and 668 of the Penal Code contemplate that a defendant shall have been *convicted* in a judicial proceeding of a crime enumerated in section 644. All the essential facts of his guilt must be res judicata. In applying section 644 the courts of this state may take cognizance only of what has been lawfully adjudicated. Any other rule would lead to absurd consequences. If our trial courts could take evidence to prove, and upon that evidence adjudicate for themselves, that a defendant had been convicted in another state of grand theft as defined in our code despite the fact that he had been there charged, tried, and convicted under a statute defining another offense (here, an offense the only adjudicated elements of which amount to petty theft in California), then our courts could also take evidence and decide that the defendant had been convicted in the other state of robbery or burglary or bribery, or any other offense enumerated in section 644, even though he had never been charged with, placed upon trial for, or adjudged guilty of, any of those offenses in such other state. Respondent relies upon certain language in *In re Taylor* (1944), *supra,* 64 Cal.App.2d 47, 51, relating to the presumption of the verity of a judgment. But if the presumption of the verity of a judgment were implicitly relied upon in habeas corpus proceedings then such proceedings could rarely if ever benefit a defendant after conviction. The language referred to actually is not at all in point on the question before us. The Taylor case was decided adversely to the

petitioner because, while his petition purported to show that the prior conviction in North Carolina, the efficacy of which as a basis for habitual criminality adjudication he challenged, was for the theft of tobacco "of the value of one hundred dollars," the record before the appellate tribunal disclosed that "on the same occasion of the indictment and conviction for the theft of tobacco" of the value of one hundred dollars the same defendant was indicted for and convicted of the offense (committed on the same day as the theft of the tobacco) of "with force and arms" stealing "an automobile of the value of four hundred dollars." Apparently it did not clearly appear what evidence had been before the trial court when the habitual criminal adjudication was made. The information charged the defendant, in somewhat general terms, with having suffered a prior conviction "for the crime of Larceny, a felony" committed "in Wilson County, North Carolina." The only presumption the District Court of Appeal indulged in favor of the verity of the judgment was that in the absence of proof to the contrary "the complete record of petitioner's prior convictions in the State of North Carolina was before the trial court, and that the court in adjudging him to be an habitual criminal did so with due regard to the provisions of section 644 of the Penal Code." Actually, that case, far from supporting respondent, sustains petitioner. With reference to the allegations of the petition therein tending to show that the prior conviction was for the theft only of the tobacco valued at one hundred dollars, the court said (at p. 50 of 64 Cal.App.2d) : "If nothing further was disclosed by the record before us we would feel compelled to grant the writ." But upon the showing that the petitioner *had in truth been convicted* on an indictment specifically charging the theft of property "of the value of four hundred dollars" and upon the lack of any showing that such proof had not been made to the trial court, the writ was discharged. Such case is obviously materially different from that before us where the only conviction (in Utah) alleged or proved was for theft of property specifically charged to be "of a value exceeding $50.00."

The pertinent averment of the information in this case is that prior to the commission of the alleged substantive offenses petitioner in 1924 "was, in the District Court of the State of Utah . . . convicted of the crime of Grand Larceny, a felony, and . . . served a term of imprisonment therefor."

Since the allegation specifically charges conviction of "Grand Larceny" in *Utah* it is, of course, obvious that any court in which it is presented must look at once to Utah's definition of grand larceny to ascertain whether the conviction there of that offense is a conviction of a felony enumerated in our section 644. The pertinent law of Utah is not a fact outside the record of local conviction, any more than the very California statute upon which the prosecution is based is a fact outside the record. We are required to take judicial notice of the laws of our sister states (Code Civ. Proc., § 1875, subd. (3)). In California grand larceny (theft) is committed "When the money, labor or real or personal property taken is of a value exceeding two hundred dollars" (Pen. Code, § 487), but in Utah "Grand larceny is committed . . . when the property taken is of a value exceeding $50.00" (Laws of Utah, 1923, p. 138, ch. 67, being the statute in force when petitioner committed the offense of which he was there convicted). The pleading and proof or admission of a conviction for grand larceny in Utah, without more, establishes that petitioner was convicted of the theft of property of a value of $50.01, a crime which is not enumerated in section 644 of the Penal Code.

The conclusion above announced is in full accord with the decision of the District Court of Appeal (hearing in this court denied) in *People* v. *Lohr* (1938), *supra*, 28 Cal.App.2d 397, 399, 400, wherein it was expressly held that "It was necessary for the prosecution to *charge and prove* that the prior convictions were among those set forth in section 644 in order to adjudge the defendant an habitual criminal" (italics added) and that where the "charge in the information does not designate the section of the . . . Act upon which defendant was convicted and the record furnishes . . . no assistance in this regard" the reviewing (as well as the trial) court "must therefore assume" that defendant suffered the prior conviction *for the least offense punishable under the statute.* To the same effect is *People* v. *Morrison* (1938), 26 Cal.App.2d 616 [80 P.2d 94]. The proposition declared is eminently correct. It is in accord with the often stated principle that "the defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute." (*People* v. *Ralph* (1944), 24 Cal.2d 575, 581 [150 P.2d 401], and cases there cited.)

It is, of course, true that after a trial on conflicting evidence and a verdict against a defendant, every reasonable inference of which the evidence admits in favor of the verdict, and, hence, against the defendant, will be assumed by a reviewing court, but we have no such situation now before us. We have only the record to consider. That record discloses a specific charge of previous conviction of "Grand Larceny" in Utah and petitioner's admission of that charge. By no process of law or reason acceptable to American standards can such admission of defendant be construed to admit more than the charge laid. There was no further proof. The trial court, therefore, was bound to assume, as are we now, that defendant suffered the prior conviction for the least offense punishable under the Utah statute, which is but a misdemeanor under California law. Therefore, the determination that petitioner is an habitual criminal with *three* prior convictions is, upon the face of the record, not supported by it. (If we go outside the record here the result is the same. The information filed in the Utah proceeding, a copy of which is attached to the petition, expressly alleged that the property stolen was of "a value in excess of $50.00." By the most elementary rules of pleading an adjudication on, or admission of, such charge would establish a value of $50.01 and no more.)

It has long been the law, even in regard to a judgment of conviction, that "if it affirmatively appears by the record that the prisoner was tried and sentenced for the commission of an act which, under the law, constitutes no crime, the judgment is void and the prisoner should be discharged." (*Ex parte Mirande* (1887), 73 Cal. 365, 371 [14 P. 888] ; see, also, *Ex parte Kearny* (1880), 55 Cal. 212, 221.) Here it affirmatively appears by the record that the prior Utah conviction alleged in the information and admitted by defendant is a conviction of an offense which, insofar as the adjudicated facts are concerned, is by California law a misdemeanor and, hence, constitutes no basis for habitual criminal adjudication. No question of sufficiency or weight of evidence is involved; the facts are not disputed. Upon the undisputed facts it follows inescapably as a matter of law that the Utah prior conviction cannot support habitual criminal adjudication. In the same sense in which it is said, for example, that the Industrial Accident Commission does not have jurisdiction to award permanent, total disability payments where the evidence without conflict establishes only temporary, partial disability, it

may be said here that the trial court was without jurisdiction to adjudicate habitual criminal status on the basis of the Utah conviction as charged in the information and admitted by petitioner.

Petitioner contends that the determination that he was previously convicted of "forgery, a felony," and served a term of imprisonment therefor is also insufficient as a basis of the adjudication that he is an habitual criminal. This contention probably would have to be sustained if we were confined to matters appearing in the trial court record of conviction. The information, in this regard, charged merely that the defendant (petitioner, here) had been previously "in the United States District Court . . . convicted upon nine counts of the crime of Violation of Section 218 of the Criminal Code of the United States . . . and said defendant served a term of imprisonment therefor in the federal prison." Section 218 of the Criminal Code (18 U.S.C.A. § 347) enumerates many prohibited acts some of which, if comparable to any state offense, would amount to no more than misdemeanors but others of which are comparable to the state crime of forgery. We have hereinabove referred to the fact that in habeas corpus proceedings we are not necessarily confined to consideration of matters of record in the trial proceedings. We are satisfied that section 1484 of the Penal Code in directing the court or judge "to hear such proof as may be produced against such imprisonment or detention, *or in favor of the same*" (italics added), fully authorizes the reception of evidence dehors the record if such evidence is directed to the proof of an issue which is cognizable in the proceeding.

We are further satisfied that the issue as to whether petitioner's convictions in the federal court were for felonies the essential substance of which is the same or substantially the same as the California crime of forgery (enumerated in section 644 of the Penal Code), is properly before this court and that the documentary evidence produced by respondent "in favor of" the detention of petitioner may properly be considered by us. From such documentary evidence (certified copies of the indictment and judgment in the federal matter) it appears that petitioner was convicted of nine counts of forging postal money orders. Section 470 of our Penal Code, which defines forgery, lists as the subjects of forgery "almost every conceivable kind and character of writing." (*People v. Munroe* (1893), 100 Cal. 664, 665 [35 P. 326, 38 Am.St.Rep.

323, 24 L.R.A. 33]; see, also, *People* v. *Turner* (1896), 113 Cal. 278, 280 [45 P. 331]; *People* v. *McKenna* (1938), 11 Cal. 2d 327, 332-333 [79 P.2d 1065]; *People* v. *Di Ryana* (1908), 8 Cal.App. 333, 336 [96 P. 919]; *In re Parker* (1943), 57 Cal. App.2d 388, 392 [134 P.2d 302].) In addition to more particularly designated instruments the section lists such general descriptions as "any transfer or assurance of money, . . . power to receive money, . . . writing obligatory, . . . or other contract for money. . . ." We entertain no doubt that the forgery of a United States postal money order is an offense within section 470 and, therefore, would be punishable by imprisonment in the state prison (Pen. Code, § 473).

It is immaterial that forgery was not one of the offenses enumerated in section 644 of the Penal Code in 1928, when petitioner committed and was convicted of the forgeries. Petitioner is not being punished for the forgeries but for the primary offenses of violations of the Narcotics Act. (*In re Rosencrantz* (1928), *supra*, 205 Cal. 534, 540; *People* v. *Biggs* (1937), 9 Cal.2d 508, 512 [71 P.2d 214, 116 A.L.R. 205].) At the time the primary offenses were committed forgery was one of the crimes enumerated in section 644 of the Penal Code. The determination that petitioner had been previously convicted of forgery was, therefore, proper as a basis for adjudging him an habitual criminal.

The correctness of the determination as to the prior conviction of burglary in Nevada is not here attacked.

For the reasons above stated it appears that petitioner is an habitual criminal who has been previously twice, but not three times, convicted of felonies enumerated in section 644 of the Penal Code (as am. Stats. 1935, p. 1699) and that he is, therefore, entitled to be accorded the benefits as well as the penalties of the law applicable to persons who have suffered two, rather than three, prior convictions; since he is not, as such habitual criminal, presently entitled to discharge or to release on parole, the writ is discharged and the petitioner is remanded to custody.

Gibson, C. J., Shenk, J., and Carter, J., concurred.

SPENCE, J., Concurring and Dissenting.—I concur with the conclusion reached in the majority opinion that the writ should be discharged and that the petitioner should be remanded to custody. I further concur with the conclusion

reached therein sustaining the trial court's adjudication that petitioner is an habitual criminal by virtue of his two prior convictions of burglary and forgery. I dissent, however, from the conclusion reached with respect to the third prior conviction of grand larceny in Utah, and from the further conclusion that "petitioner is an habitual criminal who has been previously twice, but not three times, convicted of felonies enumerated in section 644 of the Penal Code (as am. Stats. 1935, p. 1699) and that he is, therefore, entitled to be accorded the benefits as well as the penalties of the law applicable to persons who have suffered two, rather than three, prior convictions. . . ." I am further in disagreement with much of the reasoning employed in the majority opinion.

The majority opinion reaches the conclusions from which I dissent after a lengthy discussion of the circumstances under which an habitual criminal adjudication may be nullified in a proceeding on habeas corpus. However, as the majority opinion here does not nullify but, on the contrary, sustains the trial court's adjudication that petitioner is "an habitual criminal," and as the conclusion in the majority opinion, which is the subject of disagreement, concerns only the *effect* of the habitual criminal adjudication upon petitioner's eligibility for parole, I shall discuss more fully in my dissent in another pending case (*In re Seeley, post,* p. 294 [176 P.2d 24] the question of the circumstances under which an habitual criminal adjudication may be nullified in a habeas corpus proceeding. Suffice it to say here that I am entirely willing to concede that the scope of review on habeas corpus may be different when the issue is the *effect,* rather than the *validity,* of a final judgment. In those cases in which habeas corpus is used to test the *validity* of a final judgment in a criminal case, the general rule is, subject to certain exceptions which will be discussed in my dissent in the Seeley case, that the "attack upon the judgment is subject to rules applicable to collateral assaults upon judgments in other cases. Accordingly, the writ lies only when the judgment is void upon its face. . . ." (13 Cal.Jur. 240.) But the rule appears to be otherwise when habeas corpus is used to test the *effect* of the judgment, for it is said in Hurd on Habeas Corpus 330, quoted with approval in *In re Corryell,* 22 Cal. 178, at page 182: "It acts directly on the effect of the judgment, to wit, the imprisonment; but only collaterally on the judgment itself."

As shown by the provisions of our habitual criminal law

which were applicable to petitioner and are set forth in the majority opinion (Pen. Code, § 644, as am. Stats. 1935, p. 1699), it was provided that an accused should be "adjudged an habitual criminal" regardless of whether he had suffered two or more than two of the specified prior convictions. In either event the law provided that the sentence or term of imprisonment should be "imprisonment in the state prison for life." If the accused had suffered more than two priors, it was provided that he should "not be eligible for release on parole"; but if the accused had suffered only two priors, it was provided that he should "not be eligible for release on parole until he shall have served a minimum of at least twelve years." It is for this reason that any attack upon a *third* prior conviction does not involve an attack upon the *validity* of the judgment adjudicating petitioner's status as an habitual criminal but only an attack upon the *effect* of that judgment in its relation to eligibility for parole. And while I cannot agree with the majority view that a judgment making an habitual criminal adjudication is not entitled to be accorded the same sanctity and finality as any other judgment, I have no quarrel with the view that the scope of review on habeas corpus, in testing the *effect* of such judgment by inquiry concerning a *third* prior conviction, is not subject to the rigid rules applicable to a collateral attack upon the *validity* of the judgment itself.

Assuming therefore that the inquiry with respect to the third prior conviction of grand theft is not confined to the face of the record in the criminal action in which the habitual criminal adjudication was made, the entire showing made in this proceeding, including that appearing on the face of the record, may be briefly stated. In a criminal action instituted in this state in 1938, petitioner was convicted of three felonies consisting of violations of the state narcotic laws. In that action petitioner admitted three prior convictions of felonies and service of terms therefor in state and federal prisons. The three prior convictions, as alleged in the information and admitted by petitioner, were (1) a conviction in 1924, in Utah, of the crime of grand larceny, a felony; (2) a conviction in 1925, in Nevada, of the crime of burglary, first degree, a felony; and (3) a conviction in 1928, in the federal court in California, of nine counts of violation of section 218 of the United States Criminal Code (T. 18 U.S.C.A., § 347), a felony (forging and uttering United States post-office money orders).

Petitioner was adjudged to be an "habitual criminal" and was sentenced to imprisonment in the state prison "for the term prescribed by law." No claim was made in the trial court that any one of said prior convictions was not for one of the crimes specified in section 644 of the Penal Code or that any one of the offenses for which petitioner had been previously convicted was not "an offense which, if committed within this state, would be punishable by the laws of this state by imprisonment in the state prison." (Pen Code, § 668.) No motion for a new trial was made, no appeal was taken, and the judgment of the trial court adjudicating petitioner's status as an "habitual criminal" became final. Subsequently petitioner made an unsuccessful attempt to have the judgment modified or vacated and his motion was denied. The order denying the motion was affirmed on appeal. (*People* v. *Mc-Vicker*, 37 Cal.App.2d 470 [99 P.2d 1110].)

The additional showing made in this proceeding with respect to the challenged third prior conviction of grand larceny consists of presenting to this court a copy of the information and a copy of the proceedings on sentence in the criminal action in Utah in 1924. It appears from the information that petitioner was jointly charged with another defendant with having committed the crime of "Grand Larceny, a felony," in that "The said defendants, on May 27, 1924, at the County of Weber, State of Utah, wilfully, unlawfully and feloniously took, stole and drove away a certain light six Studebaker automobile, Model 1923, bearing motor No. EM95849, belonging to E. Rosenberg, the same having a value in excess of $50.00." Petitioner and his codefendant there entered pleas of guilty to the offense charged and were sentenced to and served terms for their offense in the Utah State Prison. Thus petitioner has merely shown that the challenged Utah prior conviction in 1924 of "Grand Larceny, a felony," was for the theft in 1924 of a 1923 Studebaker automobile "having a value in excess of $50.00."

While it is true that this state had, prior to the time of the commission of the Utah offense, raised from $50 to $200 the value element in its definition of "grand larceny" (Stats. 1923, ch. 129, p. 271; now known as "grand theft," Stats. 1927, ch. 619, p. 1047), and while it is further true that this state had not, prior to the time of the commission of the Utah offense, provided that the theft of an automobile of any value should constitute grand theft (see amendment to Pen. Code,

§ 487, in 1927, Stats. 1927, ch. 619, p. 1047), petitioner has made no attempt to show that the offense committed, and for which he was convicted, in Utah in 1924 (the theft of a 1923 Studebaker automobile), was not at the time the offense was committed there "an offense which, if committed within this state, would be punishable by the laws of this state by imprisonment in the state prison." (Pen. Code, § 668.) Regardless of whether it might be deemed a matter of common knowledge that a 1923 Studebaker automobile had a value of more than $200 in 1924, petitioner has made no showing that the particular automobile, for the theft of which he was convicted in 1924 upon his plea of guilty, did not have a value in excess of $200. It is the settled rule that the burden of proof is on the petitioner in a habeas corpus proceeding (*Johnson* v. *Zerbst*, 304 U.S. 458, 468 [58 S.Ct. 1019, 82 L.Ed. 1461]; *In re De La Roi*, 27 Cal.2d 354, 365 [164 P.2d 10]; *In re Wallace*, 24 Cal.2d. 933, 938 [152 P.2d 1]; *In re Egan*, 24 Cal.2d 323, 329 [149 P.2d 693]; *In re Bell*, 19 Cal.2d 488, 501 [122 P.2d 22]; *In re Connor*, 16 Cal.2d 701, 707 [108 P.2d 10]; *In re Mooney*, 10 Cal.2d 1, 85 [73 P.2d 554]; *In re Williams*, 183 Cal. 11, 15 [190 P. 163]; *In re Taylor*, 64 Cal.App.2d 47, 51 [148 P.2d 143]; *In re Knight*, 62 Cal.App.2d 582, 586 [144 P.2d 882]; *In re Mirando*, 15 Cal.App.2d 443, 445 [59 P.2d 544]; *People* v. *Sherman*, 127 Cal.App. 417, 420 [15 P.2d 881]; *In re Gough*, 124 Cal.App. 493, 496 [12 P.2d 968]) and, in the absence of the showing mentioned, I am of the opinion that petitioner is entitled to no relief in this proceeding.

The majority opinion makes an entirely different approach to this problem and I am not certain of its implications. Is it implied by the majority opinion that regardless of the value of the property taken, a prior conviction of grand larceny in another jurisdiction can never be counted as a prior conviction here if the value element of the crime, as defined in the other jurisdiction, is less than $200? Or is it implied that such prior conviction of grand larceny may be counted provided the value of the property taken exceeds $200? If the latter be the implication intended by the majority opinion, then does not the majority opinion imply that the burden of proof with respect to the value element is on respondent rather than on petitioner in this habeas corpus proceeding?

The majority opinion states: "The pleading and proof or admission of a conviction for grand larceny in Utah, *without more*, establishes that petitioner was convicted of the theft of

property of a value of $50.01, a crime which is not enumerated in section 644 of the Penal Code.'' (Emphasis added.) In support of this proposition, the majority opinion cites cases dealing with appeals from judgments adjudicating habitual criminal status, in which cases it is indicated that priors may not be counted unless the prosecution has sustained the burden in the trial court. Despite some apparent conflict on this subject in the authorities dealing with appeals (*cf. People* v. *Shaw*, 137 Cal.App. 533 [30 P.2d 1031], and *People* v. *Hayes*, 3 Cal.App.2d 59 [39 P.2d 213]), it will be assumed for the purpose of this discussion that the burden was on the prosecution in the trial court. Nevertheless, both authority and reason dictate that the burden is and should be placed on the petitioner in this habeas corpus proceeding. Petitioner has failed to sustain that burden in this proceeding, for it is he who rests upon the record of the Utah conviction ''without more'' and it appears probable that he could have made no further showing with respect to the Utah offense which would have been helpful to him.

As the majority opinion herein discusses quite generally the nature and operation of our habitual criminal law (Pen. Code, § 644), it appears appropriate here to make certain general observations with respect to these matters. As above indicated, however, the question of the circumstances under which a judgment adjudicating the accused to be an habitual criminal may be nullified on habeas corpus will be more fully discussed in my dissent in the Seeley case.

The majority opinion discusses ''the philosophy of the indeterminate sentence law.'' This discussion appears to be beside the point in a case dealing with our habitual criminal law. The Legislature of our state was fully aware of the philosophy which had been embraced in our indeterminate sentence law when it decided to adopt a different philosophy with respect to habitual criminals by providing in our habitual criminal law that the sentence should be determinate rather than indeterminate. (See *People* v. *Vaile*, 2 Cal.2d 441, 445 [42 P.2d 321].) The Legislature clearly decreed that the indeterminate sentence law should have no application to habitual criminals when it fixed the sentence of every habitual criminal, regardless of whether he had suffered two or more prior convictions, at ''imprisonment in the state prison for life.'' (Pen. Code, § 644, as am. Stats. 1935, p. 1699.) The distinction between those having suffered two prior convic-

tions and those having suffered more than two prior convictions was not a distinction as to sentence or length of term of imprisonment but merely a distinction as to eligibility for parole. It therefore cannot be said that it is any part of the philosophy of our habitual criminal law that "the length of terms of imprisonment . . . shall be subject to redetermination from time to time." On the contrary, it is the philosophy of that law that a final adjudication that the accused is an habitual criminal shall fix for all time the sentence or length of term of imprisonment at life imprisonment, subject only to the provision relating to eligibility for parole in the case of those who have suffered but two prior convictions. (See, however, recent amendments, Stats. 1945, ch. 934.)

There are many who doubt the soundness of the philosophy underlying our habitual criminal law but there is no doubt concerning the philosophy which is embraced therein. The Legislature deemed it entirely sound and consistent to embrace one philosophy in our indeterminate sentence law, which applies to those with less than two prior convictions, and to embrace a different philosophy in our habitual criminal law which applies to those with two or more prior convictions. In view of the action of the Legislature, it does not appear proper for the courts to base their reasoning upon a confusion of these two philosophies.

It is reasoning based upon a confusion of these two philosophies which leads to the majority view that no particular finality or sanctity should be attached to a judgment making a "formal adjudication that a prisoner is an habitual criminal"; and that an attack on an habitual criminal adjudication "is directed only against a determination of facts," in which attack the rules applicable to collateral attack upon judgments should not be applied. I cannot agree with these conclusions.

Section 644 of the Penal Code provides that one who has suffered two or more of the specified prior convictions "shall be adjudged an habitual criminal and shall be punished by imprisonment in the state prison for life." Such adjudication is a final adjudication of the accused's status as an habitual criminal just as a judgment of conviction of a felony is a final adjudication of the accused's status as a felon. If the Legislature had not so intended, there would have been no purpose in providing in mandatory terms for such adjudication. Any judgment making such adjudication is subject to

direct attack on appeal in the same manner as any other judgment and, after such judgment becomes final, a collateral attack thereon should be governed by the same rules which apply to collateral attacks on final judgments generally. It is no answer to point out that the omission of such adjudication would not be fatal provided ''the judgment contained an adjudication that the defendant had been found guilty of the several crimes which, when committed by a single person, rendered him an habitual criminal.'' (*People* v. *Vaile, supra,* 2 Cal.2d 441, 444-445.) In the Vaile case, there was no question, under the findings of the court, of the sufficiency of the prior convictions under section 644 of the Penal Code and it was merely held that the *effect* of such findings was the same as though the habitual criminal adjudication had actually been made. That case arose on appeal and it was neither held nor indicated that a judgment adjudicating habitual criminal status should be treated in a manner different from other judgments when subjected to collateral attack. On the other hand, it seems clear that where no habitual criminal adjudication is made, an attack in a proceeding on habeas corpus on a judgment containing mere findings of prior convictions would be an attack on the *effect* of such judgment rather than an attack upon its *validity*.

There are certain recent cases decided in the District Courts of Appeal, some of which are cited in the majority opinion and some of which lend support to the views expressed in the majority opinion. The first of these cases was *In re Connell,* 68 Cal.App.2d 360 [156 P.2d 483], which was decided in 1945. The court there, without discussing the question, apparently treated the scope of review on habeas corpus of an habitual criminal adjudication as being at least equally as broad as the scope of review on appeal. In this respect I believe the court erred. It is significant to note that the decision in the Connell case was based upon authorities dealing with direct attack upon appeal. Not a single authority was cited there dealing with collateral attack on habeas corpus. The court there did not confine its review to an examination of the face of the record in the criminal proceeding in which the habitual criminal adjudication had been made, but examined the record of the petitioner's prior conviction of ''auto theft, a felony'' committed in Utah in 1935, and the laws of Utah for the purpose of nullifying the habitual criminal adjudication and ordering petitioner's discharge from custody. For

the reasons stated in my dissent in the Seeley case, I am of the opinion that the court in the Connell case went beyond the permissible scope of review on habeas corpus.

The Connell case was thereafter cited with approval and followed in *In re Howard,* 69 Cal.App.2d 164 [158 P.2d 408]. In that case respondent questioned "the propriety of habeas corpus under the circumstances" but that question was apparently brushed aside without discussion, upon the authority of the Connell case and two cases involving direct attack. upon appeal. The Howard case was in turn cited with approval in *In re Kingsbury,* 74 Cal.App.2d 959 [170 P.2d 82], but it appears possible that the court there confined the scope of review to the "face of the record" (p. 1088). Both the Connell case and the Howard case were cited with approval in *In re Thompson,* 72 Cal.App.2d 747 [165 P.2d 533], but there the habitual criminal adjudication was not nullified as the court was dealing only with the *effect* of such habitual criminal adjudication in its relation to a *third* prior conviction of "larceny," a felony, in Wisconsin. Neither the Connell case nor the Howard case was cited in the recent case of *In re Williams,* 76 Cal.App.2d 161 [172 P.2d 558], but that decision does declare void a judgment adjudging the petitioner to be an habitual criminal, without discussion of the scope of review on habeas corpus. For the reasons stated herein as well as in my dissent in the Seeley case, I am of the opinion that these recent decisions of the District Courts of Appeal should be disapproved insofar as they hold or indicate that when habeas corpus is used to attack the *validity* of an habitual criminal adjudication, the scope of review may extend beyond the face of the record in the proceeding in which the habitual criminal adjudication was made.

The earlier case of *In re Taylor,* 64 Cal.App.2d 47 [148 P.2d 143], is discussed in the majority opinion. No relief was given petitioner there even though the prior conviction under consideration was one for the crime of "Larceny, a felony," committed in North Carolina. The scope of review on habeas corpus was not discussed, but the court held that as the burden of proof was on the petitioner in a habeas corpus proceeding and as the petitioner had failed to sustain the burden, the writ should be discharged. That case is direct authority for denying any relief to petitioner here as he has wholly failed to show that the offense committed in Utah, and

for which he suffered his prior conviction there of "grand larceny, a felony," was not an offense within the purview of section 644 of the Penal Code or that it was not "an offense which, if committed within this state, would be punishable by the laws of this state by imprisonment in the state prison." (Pen. Code, § 668.)

It must be conceded that the habitual criminal laws have presented many perplexing problems to the courts and to others charged with the administration of our penal laws. Many of these problems arise because of the differences in the laws of the several states where the prior convictions have been had. In some states certain offenses are defined in a manner similar to offenses defined in our Penal Code but are given different names. In other states certain offenses which are given names similar to offenses specified in our Penal Code are defined as having somewhat different statutory elements. The present case presents a typical example. This state defines theft (Pen. Code, § 484) and divides the crime into two degrees (Pen. Code, § 486) known as grand theft (Pen. Code § 487) and petty theft (Pen. Code, § 488). In many other states the crime of "theft" is unknown as such but most states define a similar offense under the name of "larceny." The essence of the offense of theft or larceny is generally the unlawful taking of the property of another but the statutory definitions vary in the several jurisdictions. (32 Am.Jur. 886.) Furthermore, some states provide for no degrees of larceny and make any larceny a felony. Other states divide larceny into two degrees, ordinarily distinguished by the names "grand larceny" and "petit larceny," and make the first a felony and the second a misdemeanor. Here again, however, the statutory distinctions between the two degrees differ. As stated in Wharton's Criminal Law (12th ed.) volume 2, section 1098, "The variations under statute [as to degrees of larceny] are too numerous to be stated here."

This state now defines grand theft as the taking of certain specified property of any value, or the taking of certain other specified property "of a value exceeding fifty dollars," or the taking of other property generally "of a value exceeding two hundred dollars," or the taking of property of any value "from the person of another." (Pen. Code, § 487.) Research fails to disclose any other state which has a statutory definition of the crime of "grand theft" or of "grand larceny" which is substantially identical. It appears that many other

jurisdictions make the dividing line between the felony and misdemeanor in this type of crime to depend on whether the value of the property taken exceeds $50. Assuming then, as was the case with petitioner here, that an accused is charged in this state with a prior conviction of "grand larceny, a felony" in Utah, where that crime is defined as having a value element different from the value element of the crime of "grand theft" as defined in this state, the question presented for determination is whether such prior conviction may ever be counted as a prior conviction of "grand theft" within the meaning of our habitual criminal law. (Pen. Code, § 644.)

As I read the majority opinions in this case and in the Seeley case, I am inclined to think that it is implied in said opinions that a conviction of "grand larceny" in Utah may, *under certain circumstances,* be counted in this state as such prior conviction. If this were not the rule, then an accused who had committed several offenses of "grand larceny" in Utah could never be adjudged an habitual criminal in this state by reason of such priors, even though property of great value had been taken in the commission of each of said offenses. Furthermore, any other rule would be contrary to the rule indicated by numerous decisions in this state including *In re Taylor, supra,* 64 Cal.App.2d 47; *People* v. *Morrison,* 26 Cal.App.2d 616 [80 P.2d 94]; *People* v. *Hayes, supra,* 3 Cal.App. 2d 59; *People* v. *Pace,* 2 Cal.App.2d 464 [38 P.2d 202]; and *People* v. *Shaw, supra,* 137 Cal.App. 533.

The doubt concerning the above mentioned implication arises by reason of several expressions used in said majority opinions. In the majority opinion herein, it is said that the examination of such prior conviction for the purpose mentioned requires "merely a consideration of documentary and record evidence"; that "In applying section 644 the courts of this state may take cognizance only of what has been lawfully adjudicated" in the other jurisdiction; that "any court in which it (the Utah prior conviction of grand larceny) is presented must look at once to Utah's definition of grand larceny to ascertain whether the conviction there of that offense is a conviction of a felony enumerated in our section 644"; and that "Here it affirmatively appears by the record that the prior Utah conviction alleged in the information and admitted by defendant is a conviction of an offense which, insofar as the adjudicated facts are concerned, is by California law

a misdemeanor and, hence, constitutes no basis for habitual criminal adjudication.'' In the majority opinion in the Seeley case, it is said: ''It is not the crime which a defendant may have committed in a sister state, but the crime of which he has been convicted therein, that determines his status under sections 644 and 668 of the Penal Code. The adjudicated elements of the offense must meet the requirements of the California law.'' But these doubts to which reference has been made seem to be dispelled by the implication in the majority opinion herein that a prior conviction of ''grand larceny'' in Utah is insufficient only where there is ''pleading and proof or admission of a conviction for grand larceny in Utah, *without more*. . . .'' (Emphasis added.) What ''more'' by way of pleading or proof may be required is not stated. In other words, the majority opinion fails to indicate the circumstances under which a prior conviction of ''grand larceny'' in Utah may ever be counted as a prior conviction for the purposes of our habitual criminal law.

The customary method of alleging ''grand larceny'' in Utah is no doubt exemplified by the Utah information which was filed against petitioner in 1924. The only required allegation regarding value in Utah was that the property taken had a value ''in excess of $50.00.'' Any allegation of a higher value would have been an immaterial allegation. If the information had alleged that the property taken was of the value of $1,000, the Utah court would have properly informed petitioner on arraignment for plea that if he had taken property of a value in excess of $50, any dispute as to the value as between $50.01 and the higher value alleged in the information was wholly immaterial. Likewise, the Utah court would have properly instructed the jury to like effect in the event that there had been a conflict in the evidence on value at the trial. In case of either a plea of guilty or a verdict of guilty of ''grand larceny'' in Utah, the only fact ''adjudicated'' with respect to value would have been that the property had a value ''in excess of $50.00,'' as required by the Utah statute. We therefore cannot content ourselves, as do said majority opinions, with talking of ''adjudicated facts'' or ''adjudicated elements,'' for if we do, no prior conviction of ''grand larceny'' in Utah could ever be counted as a prior conviction in this state so long as there remains any difference whatever in the value element as required by the Utah definition of grand larceny and as required by the California definition of grand

theft. While this last statement may be subject to qualification by virtue of the fact that under our present law the taking of particular classes of property, including automobiles, constitutes grand theft regardless of the value of such property (Pen. Code, § 487), it would necessarily be true as to Utah convictions for the taking of any property not falling within such particular classes. That such is not the rule in this state is clearly indicated by the authorities cited above.

It is true that a conviction in Utah for grand larceny might be either (1) for an offense involving property of a value of from $50.01 to $200 or (2) for an offense involving property of great value, perhaps of the value of $10,000 or more; and it is further true that in California an offense committed in this state and falling within the first class would be a misdemeanor only. (Pen. Code, §§ 487, 488.) It therefore appears that the crimes of grand larceny in Utah and grand theft in California are crimes which are similar but as to which the statutory definitions are not substantially identical. Under such circumstances it appears appropriate, when the prosecution relies upon a prior conviction of grand larceny in Utah, that the burden should be placed on the prosecution in the trial court to prove that the actual offense committed in Utah, and for which the accused suffered his felony conviction there, was an offense within the purview of sections 644 and 668 of the Penal Code. In such case, if the prosecution fails to assume the burden imposed upon it, then the accused has his remedy by way of a direct attack on appeal. But if a judgment adjudicating the accused to be an habitual criminal becomes final and the question is raised by the accused on habeas corpus, it is equally appropriate that the burden should be placed upon the accused in such proceeding in accordance with established rules. Assuming therefore that petitioner here is entitled to the widest latitude in his attack upon the *effect*, rather than upon the *validity*, of the habitual criminal adjudication, petitioner has made no showing whatever that the offense committed in Utah, and for which he suffered his conviction there in 1924, was *not* an offense within the purview of sections 644 and 668 of the Penal Code.

Reference is made in the majority opinion to certain language appearing in *People* v. *McVicker, supra,* 37 Cal.App. 2d 470, in which case an order denying this petitioner's motion to vacate the judgment adjudicating his habitual criminal status was affirmed. That was not a proceeding on habeas

corpus and any language in that opinion which related to the relief that might be had in a proceeding on habeas corpus was obviously dictum. Under no theory could that language be controlling here and I believe that such language should be disapproved insofar as it may be said to be in conflict with the views expressed herein or in my dissent in the Seeley case.

For the reasons stated, I am of the opinion that the writ should be discharged and that the petitioner should be remanded to custody without any declaration by this court that petitioner ''has been previously twice, but not three times, convicted of felonies enumerated in section 644 of the Penal Code.''

Edmonds, J., and Traynor, J., concurred.