[Crim. No. 4242.   First Dist., Div. Three.   Dec. 2, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. VICTOR LEROY McCULLOUGH, Defendant and Appellant.

Victor Leroy McCullough, in pro. per., and Philip W. Aaron, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Keith E. Pugh, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

SALSMAN, J.—Appellant was charged with a violation of Penal Code section 12021 (ownership and possession of a concealable firearm by a felon) and convicted by a jury.

The record reveals these facts: On November 8, 1961, at

about 3:45 a.m., Officers Pipkin and Hale were on patrol on the coast highway between Half Moon Bay and Santa Cruz. They had observed no vehicles on the highway for several hours, until at the hour indicated, about 8 miles south of Half Moon Bay, they saw appellant's car proceeding in a northerly direction. The attention of the officers was directed to the car because it was the first they had seen for several hours, and also because it was traveling at much slower than the normal speed at which vehicles usually travel along this open stretch of highway late at night. The officers observed appellant's car until it turned right at Purissima Canyon Road and headed east towards the mountains. Purissima Canyon Road leads into a remote rural area and eventually connects with Skyline Boulevard at the crest of the mountains. One or two residences are served by this road and it is improved for only a portion of its length. Officer Pipkin testified he did not believe a vehicle could reach Skyline Boulevard by Purissima Canyon Road unless it was a four-wheel drive vehicle. Purissima Canyon Road intersects the old coast highway a short distance from the new coast highway and there are residences along the old coast highway. Appellant's car hesitated at the intersection mentioned, but continued east on Purissima Canyon Road, and the officers continued to follow. Officer Hale later testified the car appeared to be lost. After following appellant's vehicle a short distance along Purissima Canyon Road, the officers decided to stop it and question its occupants. As the officers drew close, they observed appellant and a passenger, later identified as John Masters, bend over as if placing something under the front seat. The officers then turned on their red light, stopped the vehicle, and walked over to it and began to question driver and passengers. While standing beside appellant's car the officers, with the aid of a flashlight, were able to see inside. They saw beer bottles and spilled liquid on the floor of the car and smelled the odor of alcohol. The officers asked appellant and Mr. Masters to get out of the car. Officer Hale looked into the vehicle and saw a switchblade knife on the floor. He reached in and took possession of it. The officers then arrested appellant and Mr. Masters and searched them. Officer Pipkin asked Mrs. Masters to open the glove compartment of the car. The glove compartment contained a loaded .32 caliber revolver and several rounds of ammunition. Appellant admitted ownership of the car, the gun and the ammunition. When it was later determined that appellant had been previously convicted and had served a sentence for vio-

lation of title 18 United States Code section 2312 (the Dyer Act, transporting a stolen car in interstate commerce) he was charged with the offense which gives rise to this appeal.

Appellant contends that stopping his vehicle violated his constitutional rights; that his arrest, and the search and seizure which followed were illegal, and that all evidence obtained as á result should have been excluded at trial.

We must first consider whether it was proper under facts here present for the officers to stop appellant's vehicle. We have concluded it was proper, and that no constitutional right of appellant was invaded by the action of the officers.

There is a difference between the right of an officer to stop a vehicle and make a reasonable inquiry of its occupants, and the right of an officer to stop a vehicle, place the occupants under arrest, and conduct a search. (See *People* v. *King*, 175 Cal.App.2d 386, 390 [346 P.2d 235].) In the latter instance, probable cause to arrest must be present, but in the former, reasonable conduct on the part of the officer is all that is required, and the question of the reasonableness of the officer's conduct must be decided upon the facts present in each case. A fixed formula by which to measure the reasonableness of the officer's conduct is difficult, if not impossible, to devise. Our own Supreme Court, however, has clearly held that it is not unreasonable for a police officer to question a citizen abroad late at night. (See *People* v. *Simon*, 45 Cal.2d 645, 650 [290 P.2d 531]; *People* v. *Blodgett*, 46 Cal.2d 114, 117 [293 P.2d 57]; see also, *People* v. *Ellsworth*, 190 Cal. App.2d 844, 847 [12 Cal.Rptr. 433]; *People* v. *Gibson*, 220 Cal.App.2d 15, 20 [33 Cal.Rptr. 775, 778].) Indeed, as the facts of this case illustrate, it may be necessary in the proper discharge of the officer's duty, to protect the very persons who are stopped for interrogation. Here, appellant's vehicle appeared to be lost, and was proceeding into an area of potential danger. Under such circumstances it seems clear that the officers, in the discharge of their duty to protect the public, including motorists who appear to be lost, acted reasonably in stopping appellant's vehicle, and it would appear unreasonable to hold that probable cause to arrest must exist before stopping the vehicle could be justified.

After the officers stopped appellant's vehicle, they approached it, made the observations set forth in the statement of facts, and placed appellant under arrest. They were fully justified in doing so. A police officer may make an arrest without a warrant when he has reasonable cause to be-

lieve the person to be arrested has committed a public offense in his presence. (Pen. Code, § 836, subd. 1.) ▮ Reasonable cause to arrest exists when the officer, acting as a man of ordinary prudence, honestly believes the person to be arrested is guilty of a crime. (*People* v. *Ingle*, 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) ▮ Seeing what is in plain sight is not a search. (*People* v. *Mosco*, 214 Cal.App.2d 581, 585 [29 Cal.Rptr. 644].) ▮ Here the officers observed open beer bottles on the floor of the car in front of the driver's seat, and some liquid spilled on the floor, and smelled the odor of alcohol. They could reasonably believe a misdemeanor was being committed in their presence. (Violation of Veh. Code, § 23121, drinking in a motor vehicle; violation of Veh. Code, § 23122, possession in a motor vehicle of alcoholic beverages in an opened container.) The officers also saw a switch-blade knife partially concealed under the front seat of the car, and from this and the furtive movements of appellant as the car was stopped, they could reasonably believe there was a violation of Penal Code section 653k (carrying a switch-blade knife) or Penal Code section 12020 (carrying a concealed dagger). Without search, and merely on the basis of their observation as they stood beside the car, the officers had reasonable cause to arrest appellant.

▮ Appellant next contends that since the elaboration of *Mapp* v. *Ohio*, 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933], by the United States Supreme Court in *Ker* v. *State of California*, 374 U.S. 23 [83 S.Ct. 1623, 10 L.Ed.2d 726], the California rule allowing the police to stop a car for investigation is no longer proper because under federal law, the police must have probable cause to arrest before a car may be stopped (see *Henry* v. *United States*, 361 U.S. 98 [80 S.Ct. 168, 4 L.Ed.2d 134]). Subsequent to the *Mapp* decision and prior to the *Ker* decision, the California Supreme Court stated: "We do not believe that our rule permitting temporary detention for questioning conflicts with the Fourth Amendment. It strikes a balance between a person's interest in immunity from police interference and the community's interest in law enforcement. It wards off pressure to equate reasonable cause to investigate with reasonable cause to arrest, thus protecting the innocent from the risk of arrest when no more than reasonable investigation is justified." (*People* v. *Mickelson*, 59 Cal.2d 448, 452 [30 Cal. Rptr. 18, 380 P.2d 658].)

Appellant argues that the rule of the *Mickelson* case is no

longer proper in light of the *Ker* case. But in *Mickelson,* our Supreme Court said that the rule of the *Henry* case was not "constitutionally compelled. Given the absence of legislation, the court had to articulate the governing rule and enforce compliance with it. It did not thereby foreclose Congress or the states from articulating other reasonable rules consistent with the Fourth Amendment." (*People* v. *Mickelson, supra,* at p. 452.) Furthermore, in the *Ker* case, the United States Supreme Court stated that "Mapp, however, established no assumption by this Court of supervisory authority over state courts, cf. *Cleary* v. *Bolger* (1963) 371 U.S. 392, 401 [83 S.Ct. 385, 9 L.Ed.2d 390, 396], and, consequently, it implied no total obliteration of state laws relating to arrests and searches in favor of federal law." (*Ker* v. *State of California, supra,* 374 U.S. 23, 31 [83 S.Ct. 1623 at p. 1629, 10 L.Ed.2d 726, 736].) Thus we conclude the stopping of appellant's car was not violative of his rights under the Fourteenth Amendment.

▪ Appellant further contends that conviction under the Dyer Act is not a felony as that term is used in Penal Code section 12021 under which appellant was here charged and convicted. There is no merit in this contention. The penalty fixed for violation of the Dyer Act is a fine of not more than $5,000 or imprisonment for not more than 5 years, or both. (See 18 U.S.C. § 2312.) 18 United States Code section 1 states: "Any offense punishable by death or imprisonment for a term exceeding one year is a felony." A copy of the record of appellant's conviction was in evidence. The cited statutes clearly define appellant's offense as a felony. Federal cases have held that it is not the actual punishment imposed but that which is authorized by the statute which determines whether the felony is a crime or a misdemeanor. (See *Barde* v. *United States,* 224 F.2d 959; *Giammario* v. *Hurney,* 311 F.2d 285, 287.) Section 12021 does not require that the prior conviction be of a crime which would be a felony under California law. Rather, it prohibits possession of certain weapons by one "who has been convicted of a felony under the laws of the United States, of the State of California, *or* any other state. ..." The disjunctive makes clear that prior federal conviction proscribes possession of the described weapon.

▪ Appellant further argues there is insufficient evidence to sustain the finding of criminal intent or that the weapon was under his custody and control at time of arrest.

The statute under which appellant was charged does not require any specific criminal intent. General intent to do the proscribed act is all that is necessary. (*People* v. *Gonzales*, 72 Cal.App. 626 [237 P. 812].) Appellant's attempt to deny possession or control of the gun by evidence that he had instructed his wife to remove the weapon from the car is of no avail. Appellant admitted ownership of the car, the gun, and the ammunition. Ownership of the gun is all that is required for a violation of the statute.

Judgment affirmed.

Draper, P. J., and Devine, J., concurred.