[Crim. No. 9216. Second Dist., Div. Four. June 10, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. BENNY NILES, Defendant and Appellant.

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.

John W. Van Doren, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant, Benny Niles, was charged by information with burglary in violation of Penal Code section 459, and with assault by means of force likely to produce great bodily injury in violation of Penal Code section 245. Two prior felony convictions were alleged, to wit: manslaughter in Louisiana in 1941, and assault with a deadly weapon in California in 1951. Appellant pled not guilty to each count and denied the prior convictions. Immediately before trial, defendant admitted each of the prior convictions. The jury found appellant guilty of burglary of the second degree, and guilty of assault with force likely to produce great bodily injury. Appellant was sentenced to the state prison on the burglary charge, and also sentenced to the state prison on the assault charge; however, as to the assault charge, the court granted a stay of execution on the latter sentence pending appeal and service of sentence on the burglary charge, such stay to become permanent when the burglary sentence was completed. From the judgment of conviction and sentence, defendant prosecutes this appeal.

Although defendant staunchly denies that he ever committed, or is in any way connected with, the crimes with which he was charged, we state the evidence as presented at the trial in the light most favorable to the People.

Mr. Henry Duncan, the prosecuting witness, rented a single room in the rear of a house located at 1561 East 98th Street. The room had an outside entrance, whereby Mr. Duncan could come and go without walking through the remainder of the house. On February 13, 1963, at about 5 o'clock in the afternoon, Mr. Duncan was sitting in the living room of the house talking to an invalid lady, Mrs. Moore. Mrs. Moore said something to Mr. Duncan, who im-

mediately rushed to his room, a distance of some 40 feet. When he got to his room he saw that his clothes, which had been hanging in the closet, were gone. The door leading to the outside was open, although Mr. Duncan recalled that the door was closed the last time he was in his room, which was about 10 minutes earlier, but he was not sure whether the door was locked or not. Mr. Duncan immediately stepped outside where he saw defendant with his (Duncan's) clothes in his arm. Mr. Duncan grabbed his clothes away from defendant, walked back into his room where he laid his clothes on the bed. About a minute and a half later Mr. Duncan went outside again and saw defendant standing by a swing in the back yard. Upon Mr. Duncan's threatening to call the police, defendant retorted, "You are not going to call no God damn law"; reached under his coat pretending he had a gun and said, "I will shoot you if you call the police." Mr. Duncan, believing defendant had a gun, tried to stop defendant from using it. The two men began scuffling and defendant hit Mr. Duncan on the right front forehead above the eye with a piece of pipe that had been lying on the fender of a car.

Mr. Warren Allen, a gas station attendant at a garage next to the house in which Mr. Duncan roomed, testified that he saw defendant and Mr. Duncan fighting by some cars and saw defendant strike Mr. Duncan with a pipe.

I

 Defendant contends that the verdict on the assault charge is inconsistent with the verdict of second degree burglary. Defendant's argument proceeds along these lines: Since the jury found him guilty of burglary in the second degree, they necessarily found him innocent of the assault charge by reason of the fact that section 460 of the Penal Code specifically classifies burglary of an inhabited dwelling house accompanied by an assault on any person as burglary in the first degree. Therefore, since both counts are based on the same transaction, closely related in time and place, the verdict of the jury on the burglary count refutes the possibility of the commission of the offense by means of an assault, making the verdict on the assault count void, and requiring it to be set aside. (*People* v. *Novo* (1936) 12 Cal. App.2d 525 [55 P.2d 915].)

We find this contention to be without merit. The record clearly shows that the assault upon Mr. Duncan took place outside the house during a fight after the property taken had

been recovered and brought back into the house. In light of this state of the record, there was substantial evidence to justify the jury in finding that the burglary had terminated when the assault occurred. Moreover, this conclusion is adequately supported by the following excerpt from the reporter's transcript:

"THE COURT: Mr. Womack, I understand that there is a question of law that you desire to have answered. What is it?

"THE FOREMAN: That is to the degree of what constitutes when a burglary ceases and something else takes over.

"THE COURT:I see what you mean. In other words—

"THE FOREMAN: Time limit. Is there a time limit?

". . . . . . . . . . . . . . . . . . .

"THE COURT: The question is, as I gather from the foreman, when is a burglary terminated. Is that substantially correct?

"THE FOREMAN: Yes, sir.

"THE COURT: All right. Under the law as I understand it, the entry into a building of the kind—or room or apartment—with the intent to commit theft constitutes burglary, and the moment the threshold is crossed as a matter of law burglary has been committed. However, it is the law that as a part of the transaction, as a part of the burglary, a successful escape with any loot that may have been taken is also a part of the burglary. It is a part of the one transaction. Does that answer your question?"

From the foregoing excerpt it becomes patently clear that the jury was pondering the question as to whether or not the burglary had terminated when the assault occurred. ▬ The verdict of the jury carries with it the implied finding that the burglary had in fact terminated when the assault took place. ▬ Furthermore, it is well settled that multiple convictions may be proper, even though the acts giving rise to each crime are closely connected in point of time. (*People* v. *Slobodion* (1948) 31 Cal.2d 555 [191 P.2d 1]; *People* v. *Fields* (1961) 190 Cal.App.2d 515 [12 Cal.Rptr. 249].)

## II

Defendant's next contention is that the court erred in *sentencing* him upon both counts arising out of the same act or transaction. (Pen. Code, § 654.)

Section 654, in part, provides: "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ."

██ The prohibition of section 654 against multiple punishment is not solely limited to situations where a single act of defendant has violated more than one section of the Penal Code or the criminal provisions of the other codes, or where different offenses arising out of a single act are necessarily included within the other (*People* v. *Smith* (1950) 36 Cal.2d 444, 448 [224 P.2d 719]), but may also apply where defendant's actions constituted a course of conduct which resulted in the violation of more than one statute. "The principles governing the application of section 654 were clarified ... in *Neal* v. *State of California,* 55 Cal.2d 11, 18 et seq. [9 Cal. Rptr. 607, 357 P.2d 839]. It was there pointed out, upon an analysis of several earlier decisions, that the prohibition of the statute against double punishment applies not only where 'one "act" in the ordinary sense' is involved but also where there is a 'course of conduct' which violates more than one statute and comprises an indivisible transaction punishable under more than one statute within the meaning of section 654; that the divisibility of a course of conduct depends upon the intent and objective of the defendant; and that if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one." (*People* v. *McFarland* (1962) 58 Cal.2d 748, 760 [26 Cal. Rptr. 473, 376 P.2d 449].)

██ The evidence, as we have seen, is sufficient to support convictions for both burglary in the second degree and assault by means of force likely to produce great bodily injury. However, taking into consideration the totality of the picture, defendant's actions comprised an indivisible transaction in which the offense of assault was merely incidental to but one objective, to burglarize Mr. Duncan's premises and avoid being apprehended by the law. This being so, section 654 is a proscription against the defendant's being punished for both burglary and assault.

██ The issue now before us is whether the action of the trial judge in sentencing the defendant on the assault charge, but staying execution on that count pending any appeal and during the service of any sentence the Adult Authority pronounces in connection with Count I, the burglary count, and at the completion of the service of any sentence in connection with Count I, the stay to become permanent, amounts to double punishment, within the proscription of section 654? We believe not.

■ "[I]t should be stressed that section 654 proscribes double punishment, not double conviction; conduct giving rise to more than one offense within the meaning of the statute may result in initial conviction of both crimes, only one of which, the more serious offense, may be punished. (*People* v. *Chessman,* 52 Cal.2d 467, 497 [341 P.2d 679].) ■ *The appropriate procedure, therefore, is to eliminate the effect of the judgment as to the lesser offense insofar as the penalty alone is concerned.* (See *People* v. *Brown,* 200 Cal.App.2d 111, 118 [19 Cal.Rptr. 36].)" (Italics added.) (*People* v. *McFarland, supra* (1962) 58 Cal.2d 748, 762-763.)

It is obvious that this rule poses real problems for a trial court at the time of sentence. At that time, the court must take into consideration the fact that its judgment, on either count, might be reversed on appeal. An appellate court may safely reverse the conviction on one count, in order to preclude the possibility that dual judgments might work a disadvantage to the defendant (see *People* v. *Tideman* (1962) 57 Cal.2d 574, 586 [21 Cal.Rptr. 207, 370 P.2d 1007]; *People* v. *McDaniel* (1957) 154 Cal.App.2d 475, 485 [316 P.2d 660]), or, as *People* v. *McFarland, supra* (1962) 58 Cal.2d 748, 763, suggests as a preferable procedure, may reverse the sentence only, leaving the conviction standing. But a trial court is in a different position, if it dismisses the count carrying the lesser penalty, and the conviction on the remaining count should be reversed on appeal, the defendant would stand with no conviction at all. Nor can the trial court safely sentence on one count only, since it would lose jurisdiction after 21 days to sentence on the second count. (Pen. Code, § 1191)—long prior to any possible disposition of an appeal. ■ In *People* v. *Kynette* (1940) 15 Cal.2d 731 [104 P.2d 794], the court approved the imposition of concurrent sentences. But, in light of *People* v. *McFarland, supra,* that procedure is no longer proper. (See also *People* v. *Bailey* (1964) *ante,* p. 440 [38 Cal.Rptr. 718].) ■ It follows that the procedure adopted by the trial court in this case was a reasonable—and so far as we can see the only possible—reconciliation of the various policies involved. Any other method either incurs the risk of letting a defendant escape altogether, or else imposes an unnecessary burden on an appellate court and on the trial court on the inevitable remand for correction of sentence. The procedure here affords appellant the maximum protection to which section 654 entitles him and, under no condition, can operate to his prejudice.

## III

Defendant contends, also, that he was prejudiced when the prior conviction for manslaughter in Louisiana was brought out on cross-examination, because there was no showing that such conviction was in fact a felony under California law, citing *People* v. *Morton* (1953) 41 Cal.2d 536 [261 P.2d 523]; *In re McVickers* (1946) 29 Cal.2d 264 [176 P.2d 40]; *In re Seeley* (1946) 29 Cal.2d 294 [176 P.2d 24].

The information alleged that, prior to the commission of the offenses charged therein, defendant had been convicted in Louisiana of the crime of manslaughter, a felony; that judgment was rendered thereon; and that he served a term of imprisonment therefor in the state prison. Defendant admitted this prior conviction, and does not now deny that he served a prison term in Louisiana for that offense. His sole contention is that it is impossible for him to tell whether that offense was a felony in California at the time it was committed. As will be seen, this contention, too, is without merit.

The cases cited and relied on by defendant are easily distinguishable from the case at bar. *In re McVickers, In re Seeley,* and *People* v. *Morton* were primarily concerned with our habitual criminal statute, Penal Code, section 644. These cases, in part, stand for the proposition that " 'In order to adjudge a defendant an habitual criminal the test is not whether he shall have been twice convicted of any felonies, but whether he shall have been twice convicted of *felonies enumerated in section 644 of the Penal Code.'* (Italics added.) [Citation.] ▪ It is also settled that the crimes enumerated in section 644 must be understood to be crimes *as defined in the laws of California* and, if committed elsewhere, regardless of the names by which they may be designated, *must in their substance come within California's definitions of the enumerated crimes.* [Citations.] " (Italics in original.) (*In re McVickers, supra* (1946) 29 Cal.2d 264, 267.) And to warrant an adjudication that defendant is an habitual criminal the People must prove the alleged prior convictions beyond a reasonable doubt. (*People* v. *Morton, supra,* (1953) 41 Cal.2d 536, 539.)

Presently, we are concerned with an entirely different problem. ▪ The people impeached defendant pursuant to section 2051 of the Code of Civil Procedure by asking him if he was ever convicted of a felony, to which he answered "Yes." It was not then incumbent upon the People, after this admission by defendant, to substantiate thier impeach-

ment of him to offer proof that the manslaughter conviction in Louisiana was in fact a felony under California law.

## IV

At oral argument, counsel for appellant raised another point, not presented in his briefs. Although this is improper, we elect, under the circumstances of this case, to consider it. ▇ He now contends that it was error to find as true the allegation of the Louisiana prior conviction, absent a showing that manslaughter in Louisiana did not include conduct which, under California law, was nonfelonious. Under the circumstance of this case, no error was committed. Neither of the offenses involved in the present prosecution barred appellant from probation. ▇ Burglary is not one of the offenses barring probation unless the defendant was, at the time of such offense, armed with a deadly weapon; and we have pointed out above that appellant here was not so armed. ▇ Nor does the assault conviction bar probation since neither charge nor finding refers to a "deadly" weapon.[1] ▇ Probation, therefore was barred only if, as the trial court remarked, appellant had suffered two prior felony convictions. But the statute expressly requires that an out-of-state conviction be for an offense which would have been a felony if committed in California. (Pen Code, § 1203.)

While we are not here concerned with the habitual criminal law (Pen. Code, § 644) and thus are not involved with the problem indicated in the quotation heretofore made from *In re McVickers*, still it is clear that, if the point had been appropriately raised in the trial court, the People would have been required to prove that appellant's conviction in Louisiana, for what that state denominated "manslaughter," could not have been for conduct which California did not punish as a felony, either under the same or under some other name. ▇ However, we think that a defendant, if he desires to question the felonious character of his prior offense, as tested by California law, must call that issue to the attention of the trial court, either at the time he is arraigned on the allegation of the prior conviction, or at the time of sentence. ▇ If, as here, he admits the prior felony as charged, he cannot thereafter object that proof was not made that the offense was a felony under California law. When

[1] It is, of course, true that the piece of pipe used by appellant might have been found to be a "deadly weapon"; but no such allegation, nor any such finding, was made in this case.

he admits the prior felony conviction he does so for all purposes unless he qualifies the admission in some particular thereby putting the People to proof.

 In addition, in this case, this court can take judicial notice of the law of Louisiana. (Code of Civ. Proc., § 1875, subd. 3.) Louisiana, at the time herein involved, followed the common law definition of manslaughter. (See 5 La.L.Rev. 6.) While California has modified the common law definition of that crime, we can think of no conduct which the common law punished under the name of manslaughter which was not, and is not, felonious in California. It follows that, had proper proof been seasonably demanded and made in the trial court, it could only have resulted in a finding adverse to appellant. Under these circumstances, the omission could not have been prejudicial in any event.

Other points raised by appellant are devoid of merit and need not be herein discussed.

The judgment is affirmed.

Burke, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied June 29, 1964, and appellant's petition for a hearing by the Supreme Court was denied August 5, 1964.