250 Cal.App.2d 933 (1967)
THE PEOPLE, Plaintiff and Respondent,
v.
ISRAEL DABNEY, Defendant and Appellant.
Crim. No. 5417. 
California Court of Appeals. First Dist., Div. One. 
May 15, 1967.
 Costello, Johnson, Kemp & DeCaro, Phillip Seymour DeCaro and Kenneth A. Johnson for Defendant and Appellant.
 Thomas C. Lynch, Attorney General, Edward P. O'Brien and Don Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.
 SIMS, J.
 Defendant has appealed from a judgment sentencing him to state prison following his conviction by a jury of possession of heroin in violation of the provisions of section 11500 of the Health and Safety Code, with an admitted prior conviction on February 10, 1956 of possession of narcotics in the State of Illinois. *936
 Appellant contends that he was arrested without probable cause, and that the trial court erred in admitting into evidence the narcotics discovered as a result of this arrest. He further, for the first time on this appeal, asserts that his admitted prior conviction cannot be used against him without a showing that he was represented by counsel or that he intelligently and effectively waived that right in the prior Illinois proceedings; and that, in any event, his prior conviction was a misdemeanor, not a felony, and cannot be used to increase his punishment for the present offense.
 An examination of the circumstances attendant to appellant's arrest demonstrates that the trial court did not err in admitting in evidence the "bindle" of heroin discarded by appellant.
 Appellant's admissions at the trial, coupled with the absence of facts in the record to sustain his present contentions, preclude their consideration on this appeal.
 Legality of the Arrest
 [1a] "When, ... the question of the legality of an arrest or of a search and seizure is raised either at the preliminary hearing or at the trial, the defendant makes a prima facie case when he establishes that an arrest was made without a warrant or that private premises were entered or a search made without a search warrant, and the burden then rests on the prosecution to show proper justification. [Citations.]" (Badillo v. Superior Court (1956) 46 Cal.2d 269, 272 [294 P.2d 23].)
 "[T]he search of defendant's person may be justified only if he was committing or attempting to commit an offense in the officer's presence (Pen. Code, 836, subd. 1), or the officer had reasonable cause to believe he had committed a felony. (Pen. Code, 836, subd. 5.)" (People v. Simon (1955) 45 Cal.2d 645, 648 [290 P.2d 531]; and cf. Pen. Code, 836, as amended Stats. 1957, ch. 2147, 2, p. 3805.)
 "Reasonable or probable cause for an arrest has been the subject of much judicial scrutiny and decision. There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citation]--and on the total atmosphere of the case. [Citations.] [2] Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.] [3] Probable cause has also been defined as *937 having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt. [Citations.] It is not limited to evidence that would be admissible at the trial on the issue of guilt. [Citation.] The test is not whether the evidence upon which the officer acts in making the arrest is sufficient to convict but only whether the person should stand trial. [Citation.]" (People v. Ingle (1960) 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577]; see also People v. Talley (1967) 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564]; People v. Garavito (1967) 65 Cal.2d 761, 764 [56 Cal.Rptr. 289, 423 P.2d 217]; People v. Cockrell (1965) 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116]; People v. Harris (1965) 62 Cal.2d 681, 683 [43 Cal.Rptr. 833, 401 P.2d 225]; People v. Torres (1961) 56 Cal.2d 864, 866 [17 Cal.Rptr. 496, 366 P.2d 823]; People v. Privett (1961) 55 Cal.2d 698, 701-702 [12 Cal.Rptr. 874, 361 P.2d 602].)
 [1b] The facts pertinent to the issue of the legality of the arrest are as follows:
 About midnight on January 8, 1965, four police officers went to 61 Del Mar Street, San Francisco, to search for William Schindler. Schindler was suspected of stealing a Stradivarius, and the police had received information from his brother, among others, that he was in hiding at the above address. [fn. 1] The police had with them a felony warrant for Schindler's arrest for grand theft, automobile (Pen. Code, 487, subd. 3) and a misdemeanor warrant for his arrest for possession of drugs. In addition, a complaint had been signed and an application for a warrant was pending for his arrest for grand theft of the violin.
 61 Del Mar was the residence of Jerry Hallie. It was the downstairs flat of a two-flat building owned by Hallie. Each of the flats in that building had a separate entrance on Del Mar, a separate rear door opening to the back yard, and a common front porch. The police knocked first at number 61. *938 They testified that they knocked and rang the bell for a period of five to ten minutes, that they received no answer, that they observed some of the lights go out in the apartment, and that they could hear movement within.
 The officers testified that they then rang the doorbell of the upstairs flat, number 69, and were given permission, by a man who answered and identified himself as the resident, to pass through to the back yard. Two of the police officers, Yasinitsky and Hurley, testified that they went upstairs, while Officer Dickson and the other officer waited on the front porch.
 Yasinitsky and Hurley stated that they proceeded to the back door and that upon opening it, they were face to face with Hallie and appellant, who were standing on the back porch of the upper flat. Yasinitsky, who testified that he was known to Hallie from a previous arrest and from official visits, said that as soon as this confrontation occurred, Hallie, who had been holding a rifle, dropped it. The officers testified that they saw Hallie move and throw something toward two refrigerators that were on the back porch. Appellant, during this interval, was trying to hide behind one of the refrigerators.
 Yasinitsky stated at trial that he feared the men might be armed. He therefore directed his attention to appellant, telling him to come out from behind the refrigerator, while telling Hurley to pick up what had been discarded. Hurley picked up the object and showed it to Yasinitsky. Both officers testified it was a rubber prophylactic containing a powdery substance. The officers testified that since they knew narcotics were transported in this manner, and since they believed the powdery substance to be a narcotic after examining it, they placed Hallie and appellant under arrest.
 Inspector Yasinitsky did not ask appellant any questions before he placed him under arrest. The officers took Hallie and appellant into the kitchen of the upstairs flat and conducted a pat search for weapons. Yasinitsky then directed Hurley to take the two men downstairs while he searched the back porch.
 Hurley ordered the men to go downstairs, with appellant leading the way. There was a disturbance on the stairway involving Hallie. According to Officer Dickson, who was waiting at the foot of the stairway, appellant descended almost all the way and then let a small white piece of folder paper slip from his hand. This paper was identified as a "bindle" containing heroin. Dickson testified he picked it up, opened it, observed its contents, and turned it over to Officer Hurley. *939
 Appellant and Hallie testified that appellant had come to the Hallie home about midnight to pick up a television set that Hallie was repairing. They testified that the upstairs flat was occupied by four or five young women, that on a previous occasion the women had been bothered by intruders and that when they heard noises upstairs they proceeded to the upstairs flat via the back stairway to help the young ladies. Hallie testified that, although there was some knocking at the front door, Hallie knew his wife would answer it. He also testified that there were no lights on in the house except the kitchen light. Several other friends were gathered there. Both appellant and Hallie testified they had no knowledge of the presence of narcotics. Hallie testified that he had no knowledge of the gun.
 Mrs. Hallie testified that she did not hear any knocking on the night in question because the television set was on. She testified that guests often gathered in the kitchen. She also testified that the young women who lived upstairs had been disturbed once some months before.
 In People v. Privett, supra, the opinion states: "While evasive conduct upon the approach of police officers may under proper circumstances justify an arrest and search [citations], the observed approach to a private home in the nighttime of a party of seven or eight roughly dressed men and their knocking on the door might reasonably lead the most innocent of persons to extinguish the lights hoping that they would depart, and their subsequent announcement that they were police officers might reasonably arouse a degree of skepticism that would lead the occupants to make no immediate response or indeed any response at all, except possibly to telephone for the aid of those whom they knew with certainty to be police." (55 Cal.2d at p. 702; and see People v. Cedeno (1963) 218 Cal.App.2d 213, 224-230 [32 Cal.Rptr. 246]; and People v. Zabala (1963) 217 Cal.App.2d 550, 554-555 [31 Cal.Rptr. 712].)
 It may be assumed that the failure to answer the door and the extinguishing of the lights gave the officers no right to take further action against appellant or his host in derogation of their rights to be free from arrest and search and seizure without probable cause.
 The fact that the foregoing omission and act were accompanied by an opportunity for the occupants to observe and recognize those who were at the door, and were followed by *940 noises of movement within may, however, be of some significance in evaluating the subsequent actions of the officers. (See People v. Talley, supra, 65 Cal.2d 830, 837 and cases cited; People v. Garavito, supra, 65 Cal.2d 761, 764; People v. Edmundson (1963) 222 Cal.App.2d 781, 785 [35 Cal.Rptr. 598]; and People v. Tyler (1961) 193 Cal.App.2d 728, 732-734 [14 Cal.Rptr. 610].)
 The evidence demonstrates that the officers were authorized to be on that part of the premises where the confrontation, apparently to the surprise of all concerned, with appellant and his host occurred. It is unnecessary to determine whether the circumstances up to that point demonstrated probable cause of the commission of the offense of harboring a fugitive in violation of the provisions of section 32 of the Penal Code.
 Before the officers could do anything further, they were confronted with evidence of what they had reasonable cause to believe was the commission of the offense of possession of narcotics by Hallie. Within the principles enunciated above, they were entitled to consider their knowledge of the manner in which narcotics are frequently packaged, and Hallie's action in attempting to dispossess himself of the package. (See People v. Garavito, supra, 65 Cal.2d 761, 764; People v. Torres, supra, 56 Cal.2d 864, 866-867; Willson v. Superior Court (1956) 46 Cal.2d 291, 295 [294 P.2d 36]; People v. Currier (1965) 232 Cal.App.2d 103, 107 [42 Cal.Rptr. 562]; People v. Tyler, supra, 193 Cal.App.2d 728, 733; and People v. Amado (1959) 167 Cal.App.2d 345, 347 [334 P.2d 254].) [fn. 2]
 [4a, 5a] Appellant asserts that the action of Hallie furnished no reasonable cause for his arrest; and that, therefore, the production of the "bindle," thereafter allegedly disposed of by him, is barred because it is the product of his illegal arrest. He relies upon Badillo v. Superior Court, supra, wherein it is observed: "The attorney general contends that defendant abandoned the evidence when he threw it toward Agent Hipkins and that therefore he may not object to its use against him. It clearly appears, however, that defendant's flight out the front door and attempted disposal of the evidence was the direct result of Officer Getchell's illegal entry, and accordingly, the evidence was obtained in violation of constitutional guarantees. [Citations.]" (46 Cal.2d at p. 273; *941 see People v. Stewart (1966) 241 Cal.App.2d 509, 515-517 [50 Cal.Rptr. 630] and cases cited; and cf. People v. Stout (1967) 66 Cal.2d 184, 190-192 [57 Cal.Rptr. 152, 424 P.2d 704].)
 The protection of the last principle is only available to appellant if his premise that there was no reasonable cause to arrest him is sound. In People v. Simon, supra, the court commented, as follows, on the right to arrest one because of an offense committed by a companion: "In the present case, however, there was no evidence of anything apparent to the officer's senses before the arrest and search that defendant was committing or attempting to commit an offense in his presence [citation], and it does not appear that the officer had reasonable cause to believe he had committed a felony. It is true that defendant's friend had a bottle, and it may be assumed without deciding that the appearance of the bottle and of defendant's friend were sufficient to justify the officer's concluding that the friend was committing a misdemeanor in his presence. [Citations.] The mere fact, however, that defendant was walking on the street with a 20-year-old friend who had a bottle did not constitute reasonable cause to believe that defendant was committing or attempting to commit an offense in the officer's presence by either aiding or abetting his friend in committing a crime or contributing to the delinquency of a minor." (45 Cal.2d 645 at p. 649; and see People v. Privett, supra, 55 Cal.2d 698, 702 and 703-704; People v. Kitchens (1956) 46 Cal.2d 260, 263 [294 P.2d 17]; People v. Sanders (1956) 46 Cal.2d 247, 251 [294 P.2d 10]; and People v. Ross (1963) 223 Cal.App.2d 196, 198 [35 Cal.Rptr. 754].)
 [6] On the other hand, where "The totality of the circumstances was sufficient to raise an honest and strong suspicion" that one person is the accomplice of another, there is probable cause to arrest the former. (People v. Harris, supra, 62 Cal.2d 681, 683; and see People v. Ingle, supra, 53 Cal.2d 407, 413; People v. Collins (1966) 242 Cal.App.2d 299, 300-301 [51 Cal.Rptr. 413]; People v. Baca (1960) 184 Cal.App.2d 693, 698-699 [7 Cal.Rptr. 864]; People v. Miller (1959) 176 Cal.App.2d 571, 575-576 [1 Cal.Rptr. 656]; People v. Green (1957) 152 Cal.App.2d 886, 889 [313 P.2d 955]; and Montgomery v. Superior Court (1956) 146 Cal.App.2d 622, 623-624 [304 P.2d 206].)
 [4b, 5b] The authorities last cited demonstrate that the trial court was warranted in considering the prior conduct of the occupants of the apartment from whence appellant and his host ostensibly came, and appellant's attempt to conceal *942 himself. These circumstances rendered him more than a mere bystander and sustain the conclusion that there was probable cause to believe that he was implicated in the witnessed narcotic violation by Hallie.
 Furthermore, appellant is in no position to claim the protection of Badillo in regard to his subsequent attempt to dispose of the contraband. Simon recognizes the right of officers to question persons under circumstances which do not suffice to show probable cause for an arrest. (45 Cal.2d at p. 650; and see People v. Stout, supra, 66 Cal.2d 184, 191 [57 Cal.Rptr. 152, 424 P.2d 704]; People v. Sheridan (1965) 236 Cal.App.2d 667, 669 [46 Cal.Rptr. 295]; People v. Amos (1961) 190 Cal.App.2d 384, 388 [11 Cal.Rptr. 834]; and People v. Spicer (1958) 163 Cal.App.2d 678, 684 [329 P.2d 917].) It was reasonable for the officers to detain appellant for further investigation of his participation in the apparent possession of narcotics by his companion, and equally reasonable to order them downstairs to the latter's apartment for that purpose. Under these circumstances appellant cannot complain if pending that investigation his attempts to rid himself of incriminating evidence resulted in his detection. (People v. Sheridan, supra, 236 Cal.App.2d at pp. 669-670; People v. Amos, supra, 190 Cal.App.2d at pp. 388-389; and People v. Spicer, supra, 163 Cal.App.2d at p. 683.)
 Badillo, Stewart and the cases cited in the latter, all involved situations where the officers' actions, threatened or actual, transcended the bounds permitted by law. The appellant's exposure of his "bindle" terminated whatever chance he otherwise might have had to explain his apparent flight from the apartment to a hiding place on the upstairs porch with a companion in possession of narcotics. In the last analysis "Whether there was a threat of an illegal search capable of being carried out was a question of fact to be determined by the court in the light of all the circumstances. [Citations.]" (People v. Stout, supra, 66 Cal.2d at p. 192.) Appellant knew that entry into Hallie's apartment would reveal narcotic paraphernalia and further establish his complicity with Hallie. He correctly diagnosed that exculpation was improbable. Since further investigation would only add strands to the web of probable cause, his self-incriminating act cannot be deemed the result of illegal activity by the officers. The threat was not of illegal search, but of legal search which, if not already justified upon the facts before the officers, would be warranted by what they were about to discover *943 in the course of a proper and legal investigation attendant to the arrest of Hallie.
 There was no error in receiving evidence of appellant's possession of the "bindle" of heroin and the "bindle" itself.
 Prior Conviction
 By amendment to the information filed at the time of appellant's original arraignment it was charged: "Before the commission of the offense hereinbefore set forth in this information, said defendant, Israel Dabney, was in the Circuit Court of the State of Ilinois, convicted of the crime of Possession of Narcotics, a felony, and the judgment of said court against said defendant in said connection was, on or about the 10th day of February, 1956, pronounced and rendered, and said defendant served a term of imprisonment therefor in the State Prison."
 Appellant first appeared for arraignment on April 1, 1965 with private counsel and secured a continuance to plead to the information. Numerous delays ensued, occasioned by requests for continuances and appellant's failure to appear. On May 13th he appeared with the public defender and interposed a motion to dismiss the information, which motion was denied on May 24th. Further continuances and appellant's further failure to appear delayed the proceedings until July 2d when, in open court with the public defender, he entered his plea of not guilty and denied the alleged prior conviction.
 Trial of the case was continued from time to time to September 2, 1965. On that date the appellant and his codefendant appeared with private counsel and according to the clerk's minutes "each defendant admitted the alleged prior convictions charged to be true." The reporter's transcript reflects that outside the presence of the jury the clerk read in full the allegations set forth above, and appellant and his attorney each acknowledged that they were true. No objection was made to the court's observation that the defendants admitted all the priors.
 In the course of the trial appellant took the stand to testify on his own behalf and upon cross-examination admitted that he was convicted of a felony--possession of heroin. [fn. 3] *944
 On arraignment for judgment, appellant, through his counsel, indicated that he had no legal cause to show why the judgment and sentence of the court should not be pronounced. A motion for new trial was summarily denied. At a subsequent hearing the court denied probation, and sentenced the defendant to prison for the term provided by law for violation of Health and Safety Code section 11500, with an admitted prior conviction. The abstract of judgment recites: "with prior convictions admitted as follows: Date Feb. 10, 1956 County and State Circuit Court State of Illinois Crime Possession of Narcotics Disposition State Prison."
 Appellant suggests that the Illinois conviction should not be used to increase the punishment for the California offense because there is no showing this appellant had counsel or effectively waived his right to counsel in the Illinois proceedings.
 After the trial and while this appeal was pending, [fn. 4] the Supreme Court of this state filed its opinion in In re Woods (1966) 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913]. Therein it was held that one convicted in 1959 as an habitual criminal (Pen. Code, 664, subd. (a)) could collaterally attack each of the admitted prior convictions upon which that status was predicated "on the ground that he neither was advised of his right to, nor was provided with, nor expressly waived, the services of counsel before his entry of a guilty plea as to each." (64 Cal.2d at p. 5.) Companion decisions applied the same principle to permit collateral attack on a prior 1950 misdemeanor conviction which elevated a 1964 conviction of indecent exposure (Pen. Code, 314) to a felony (id., last par.; In re Luce (1966) 64 Cal.2d 11, 13 [48 Cal.Rptr. 694, 409 P.2d 918]), and a similar attack on a proved prior conviction which led to a determination that the petitioner was an habitual criminal (Pen. Code, 644, subd. a) on his subsequent *945 conviction in 1953. (In re Tucker (1966) 64 Cal.2d 15, 16 [48 Cal.Rptr. 697, 409 P.2d 921].)
 [7] There is no reason why the ground recognized in In re Woods and the related cases may not, at least since its recognition and pronouncement, be asserted at or before trial by a direct attack on an alleged prior conviction. (People v. McGinnis (1967) 249 Cal.App.2d 613, 617-619 [57 Cal.Rptr. 661]; People v. Garn (1966) 246 Cal.App.2d 482, 486-488 [54 Cal.Rptr. 867]; People v. Espinoza (1966) 241 Cal.App.2d 718, 720 [50 Cal.Rptr. 879]; and see People v. Merriam (1967) 66 Cal.2d 390, 397-398 [58 Cal.Rptr. 1, 426 P.2d 161]; People v. Ebner (1966) 64 Cal.2d 297, 304-305 [49 Cal.Rptr. 690, 411 P.2d 578]; People v. Kerry (1967) 249 Cal.App.2d 246, 253 [57 Cal.Rptr. 289] [hearing in Supreme Court denied May 4, 1967]; People v. DeJean (1967) 249 Cal.App.2d 220, 231-234 [57 Cal.Rptr. 211] [hearing in Supreme Court denied May 4, 1967]; People v. Washington (1966) 243 Cal.App.2d 681, 688 [52 Cal.Rptr. 668] [hearing in Supreme Court denied Sept. 28, 1966]; and People v. Shanklin (1966) 243 Cal.App.2d 94, 101-102 [52 Cal.Rptr. 28] [hearing in Supreme Court denied Aug. 17, 1966].)
 In McGinnis the issue arose on a charge of possession of a firearm by a convicted felon in violation of the provisions of section 12021 of the Penal Code. The court held that since the unimpeached certified copy of the prior conviction in the record reflected that the defendant had an attorney representing him when he was tried and convicted by a jury, the prior was properly established. Espinoza involved proof of two alleged prior felony convictions. The court upheld the trial court's finding that the defendant had been represented by counsel in pleading guilty to one, and that he had knowingly waived his right to counsel in pleading guilty to the other. In Garn the case was remanded for sentencing because the trial court had failed to properly resolve an issue concerning the validity of a prior conviction which affected defendant's right to probation (Pen. Code, 1203) and eligibility for treatment under the Mentally Disordered Sex Offender Act (Welf. & Inst. Code, 5500.5 and 5501). [fn. 5] *946
 In the remaining cases cited, there is no indication that the issue was raised before the trial court. In DeJean the defendant asserted that the record failed to show that he was represented by or waived his right to counsel in the proceedings which resulted in two admitted prior convictions which increased his minimum sentence and restricted his right to parole. (Health & Saf. Code, 11501.) This contention was raised for the first time on appeal without objection. The record was augmented, at the defendant's request, by documents pertaining to the prior convictions, and by the defendant's declaration under penalty of perjury. The appellate court reviewed this evidence and concluded that the allegations of the defendant's declaration did not create a triable issue with respect to the fact of waiver of counsel as recited in the documents. (249 Cal.App.2d at pp. 231-234.)
 Any implication in Ebner, Washington and Shanklin that when the record is silent there must be a reversal to establish the presence or waiver of counsel in connection with an admitted prior conviction, is dissipated and controlled by Merriam. Therein the court stated: "It is elementary that the function of an appellate court, in reviewing a trial court judgment on direct appeal, is limited to a consideration of matters contained in the record of trial proceedings, [fn. omitted] and that 'Matters not presented by the record cannot be considered on the suggestion of counsel in the briefs.' [Citations.] It is therefore clear that we cannot consider on direct appeal the matter here sought to be raised." (66 Cal.2d at pp. 396-397.) The court disapproved Shanklin, and added, "the burden of initiating inquiry into the constitutional basis of a prior conviction lies with him who would challenge its validity rather than with the trial court." (Id., at p. 408; and see People v. Kerry, supra, 249 Cal.App.2d at p. 253 [57 Cal.Rptr. 289]; and People v. Niles (1964) 227 Cal.App.2d 749, 758-759 [39 Cal.Rptr. 11].)
 Prior Felony or Misdemeanor
 Appellant directs attention to the fact that at the time of his conviction in 1956 possession of a narcotic drug was punishable in Illinois by fine or imprisonment for a period of *947 not less than one year or more than five years, or both. [fn. 6] The Illinois courts have determined that under these provisions a first conviction for possession of narcotics is a misdemeanor punishable "by fine or imprisonment in the county jail, that is, otherwise than in the penitentiary." (People v. O'Connor (1954) 4 Ill.2d 403, 407 [122 N.E.2d 806, 808]; see also same case (1953) 414 Ill. 51 [110 N.E.2d 209] and (1953) 350 Ill.App. 212 [112 N.E.2d 489]; and see People v. Shamery (1953) 415 Ill. 177, 180 [112 N.E.2d 466, 467]; People v. Hightower (1953) 414 Ill. 537, 542-543 [112 N.E.2d 126, 129]; and People v. Bain (1935) 359 Ill. 455, 470 [195 N.E. 42, 49].)
 Appellant now asserts, in contradiction of his admission at the trial and without any foundation in the record, that he was not convicted of a felony and did not serve a term in the state prison, but was convicted of a misdemeanor and served approximately four and one-half years in the Cook County jail.
 [8] An appellate court is limited to reviewing the record on appeal and unsupported statements in the briefs are not part of the record. (People v. Merriam, supra, 66 Cal.2d 390, 397; and in addition to People v. Hernandez (1957) 150 Cal.App.2d 398, 400 [309 P.2d 969], which is cited therein, see People v. Pratt (1962) 205 Cal.App.2d 838, 842 [23 Cal.Rptr. 469]; and People v. Chapman (1947) 81 Cal.App.2d 857, 862 [185 P.2d 424].)
 [9] The admission of the allegations of the prior conviction should be conclusive on that issue in the absence of fraud or mistake which would warrant collateral attack on the judgment. (See People v. Tahtinen (1958) 50 Cal.2d 127, 135 [323 P.2d 442]; People v. Niles, supra, 227 Cal.App.2d 749, 758-759; and People v. Evans (1960) 185 Cal.App.2d 331, 334 [8 Cal.Rptr. 410].) The reference to Illinois law does not alone show manifest error. From all that appears in the record appellant *948 may have been convicted and sentenced in 1956 for a then subsequent offense of possession which would subject him to imprisonment in the state penitentiary for any term from two years to life. (See fn. 6, supra; People v. Shamery, supra, 415 Ill. 177, 180 [112 N.E.2d 466, 467].)
 Respondent contends not only that appellant is bound by the admissions in his answer to the charge and in his testimony, but also that any error or mistake in nature of the prior offense is inconsequential because, whether felony or misdemeanor, it would have the same effect on his punishment.
 Section 11500 of the Health and Safety Code provides in part: "If such a person ... has been previously convicted once of any offense under the laws of any other state ... which if committed in this State would have been punishable as a felony offense described in this division, the previous conviction shall be charged ... and if found to be true ... or is admitted by the defendant, he shall be imprisoned in the state prison for not less than five years nor more than 20 years, and shall not be eligible for release upon completion of sentence, or on parole, or on any other basis until he has served not less than five years in prison."
 A "felony offense" is defined as "an offense for which the law prescribes imprisonment in the state prison as either an alternative or the sole penalty, regardless of the sentence the particular defendant received." (Health & Saf. Code, 11504.)
 In 1956 the punishment prescribed for the offense of possession of heroin, if committed in this state, included imprisonment in the state prison as an alternative punishment. (Health & Saf. Code, 11712, as amended Stats. 1953, ch. 1770, 6, p. 3526, provision incorporated into 11500 and section repealed Stats. 1959, ch. 1112, 1, p. 3193.)
 [10] Even if a misdemeanor in Illinois, as contended, the prior conviction of possession of heroin would have been punishable as a "felony offense" if committed in this state. It therefore, regardless of its characterization, rendered appellant ineligible for probation (Health & Saf. Code, 11715.6; People v. Wallace (1963) 59 Cal.2d 548, 549-550 [30 Cal.Rptr. 449, 381 P.2d 185]; and see People v. Griffin (1962) 209 Cal.App.2d 557, 563-564 [26 Cal. Rptr. 311]), and subjected him to the increased minimum punishment and restrictions on parole which are prescribed for a second offense. (In re Sanchez (1966) 65 Cal.2d 556, 558-559 [55 Cal.Rptr. 422, 421 P.2d 430]; People v. Pineda (1965) 238 Cal.App.2d 466, *949 470-471 [47 Cal.Rptr. 879]; People v. Garcia (1964) 227 Cal.App.2d 345, 352-353 [38 Cal.Rptr. 670]; People v. Calderon (1962) 205 Cal.App.2d 566, 572-573 [23 Cal.Rptr. 62]; and see People v. Wallace, supra, 59 Cal.2d 548, 553.)
 In People v. Pineda, supra, the Attorney General conceded, as he has not done here, that the first of two narcotic offenses, each of which had been charged as a felony, had been admitted by the defendant to be a felony, and had been referred to by the judge in sentencing as a felony, was in fact a misdemeanor. The court reviewed the history and policy of the laws concerning the punishment and rehabilitation of narcotic offenders and concluded: "Turning now to appellant's case, we find that two mistakes were made. First, there was the error of charging two felonies instead of one felony and one 'felony offense.' Perhaps, the judge would have rendered the same sentence anyway, and perhaps he did have in mind the fact that appellant was not a twice convicted felon, but we cannot be sure of this; and because the sentence is so long and so absolute, admitting of no modification and imposing an almost Dantesque abandonment of hope, we think that the judge should have the opportunity, as well as the responsibility, of sentencing while possessed of exact information about the prior offenses. The second mistake was this: appellant's plea, before sentence, for a lesser punishment than that which finally was imposed, was considered, it seems, as an application for probation. This was completely hopeless because, by the provisions of section 11715.6 of the Health and Safety Code, appellant was ineligible for probation. No reference was made to possible commitment for rehabilitation. ..."
 "[I]n the case before us there is complete absence of reference to section 6451, combined with the mistakes aforementioned. Where, as here, the penalty for the crime is extremely harsh and the program of rehabilitation strongly supported by public policy, and we are not assured that the sentencing judge was enabled to evaluate properly the possibility of rehabilitation for this appellant, we deem it proper to remand the case for sentencing." (238 Cal.App.2d at p. 473.)
 In Pineda the defendant was subjected to serving a minimum sentence of 15 years by virtue of two prior convictions. (Health & Saf. Code, 15000.) He was thereby rendered ineligible for the rehabilitation program unless the judge, after investigation and with the concurrence of the district attorney and the defendant, ordered commitment because the interest *950 of justice would best be served. (Welf. & Inst. Code, 3051 and 3052.)
 [11] In this case the defendant was eligible for the rehabilitation program despite his prior conviction. (People v. Wallace, supra, 59 Cal.2d 548, 553.) The record reflects that the court continued sentencing for 20 days to secure a presentence report. At the time fixed for sentence a motion for rehabilitation proceedings was interposed by appellant's codefendant and entertained by the court. It must be assumed that the court, appellant and his counsel, who represented both defendants, had the subject of rehabilitation proceedings in mind, and had defendant's presentence record before them. No request for rehabilitation proceedings was interposed, nor are any facts suggested, other than the 1956 and current conviction, to suggest that appellant was addicted or in imminent danger of becoming addicted to narcotics. On this state of the record no purpose would be served in remanding the proceedings for resentencing, even if the characterization of the prior conviction under Illinois law were established to be incorrect. (Cf. People v. Griffin, supra, 209 Cal.App.2d 557, 560-561 and 564.)
 The abstract of judgment in the record does not characterize the prior offense "possession of narcotics" as a misdemeanor or a felony. It does recite "state prison" as the disposition.
 The decision of this court shall be without prejudice to appellant's right to raise the constitutional, or any other legally cognizable issue regarding his prior conviction upon showing appropriate facts in a proper proceeding. (See People v. Merriam, supra, 66 Cal.2d 390, 398; and cf. In re Woods, supra, 64 Cal.2d 3; In re Wolfson (1947) 30 Cal.2d 20 [180 P.2d 326]; and In re McVickers (1946) 29 Cal.2d 264 [176 P.2d 40]; and note the provisions of Pen. Code, 3024, subd. (g) and 668.)
 The judgment is affirmed.
 Molinari, P. J., and Elkington, J., concurred.
 Even if the prior offense were truly a misdemeanor, appellant's admission would bar his attacking its use for impeachment. (People v. Niles (1964) 227 Cal.App.2d 749, 757-758 [39 Cal.Rptr. 11].) Furthermore, it would be proper evidence of his knowledge of the character of heroin. (See People v. Griffin (1962) 209 Cal.App.2d 125, 130 [25 Cal.Rptr. 667]; and People v. Castro (1962) 199 Cal.App.2d 159, 161-162 [18 Cal.Rptr. 678].)
NOTES
[fn. 1] 1. At the trial Schindler's brother denied that he had advised the police that the thief they sought was at the Del Mar address. He acknowledged that he had been interrogated concerning his brother's whereabouts, and that he himself had been by the premises in question a few days before. The appellant's codefendant testified that the officers inquired about Schindler's whereabouts and advised him they wanted the violin. He acknowledged he was acquainted with Schindler, and that the alleged thief had been by the premises and left a note on the door about a week before the officers came. There is no issue of trickery or subterfuge in this case. (Cf. People v. Reeves (1964) 61 Cal.2d 268, 273 [38 Cal.Rptr. 1, 391 P.2d 393].)
[fn. 2] 2. The officers were entitled to act on the facts revealed to their senses and no search was involved. (People v. Samuels (1964) 229 Cal.App.2d 351, 359-360 [40 Cal.Rptr. 290]; People v. McCullough (1963) 222 Cal.App.2d 712, 716 [35 Cal.Rptr. 591].)
[fn. 3] 3. The record recites: "Q. Have you ever been convicted of a felony, sir? A. Yes, sir, I have. Q. Which one? A. A felony 11 years ago back in Chicago. I was sentenced to 5 years, a debt that I have already paid. Q. Was it possession of heroin? A. It was possession of heroin, yes, sir, it was."
[fn. 4] 4. Although the record on appeal was filed with this court November 9, 1965 appellant's opening brief was not filed until September 19, 1966. The delays apparently ensued because appellant found it necessary to substitute a new attorney for his trial attorney who had filed the appeal on his behalf, and because of the further time necessary for the preparation of an augmentation of the record requested by the new attorney.
[fn. 5] 5. In People v. Coffey (12/21/66 and 1/18/67, hearing in Supreme Court granted 3/15/67 [66 A.C. No. 2, Minutes, p. 2]) 247 A.C.A. 499, 751 [55 Cal.Rptr. 535], the court of appeal held that the trial court erred in refusing to rule on the defendant's preliminary motion to strike an alleged prior conviction because he had not been represented by counsel or waived his right thereto; and that it was further error to permit impeachment of the defendant by reference to such prior conviction without ruling on defendant's reiterated objection. In People v. Williams (2/8/67, hearing in Supreme Court granted 3/15/67 [66 A.C. No. 2, Minutes, p. 2]) 248 A.C.A. 573 [56 Cal.Rptr. 467], the court held that where there was no question of habitual criminality or of raising a misdemeanor to a felony, the trial court could accept the admission of a prior conviction without inquiry into the presence or waiver of counsel in the prior proceedings (248 A.C.A. at pp. 578-580).
[fn. 6] 6. Par. 192.23 of Title 38 [Crim. Code] of Illinois Revised Statutes, as in effect in 1956 [as amended by act approved July 11, 1955, L. 1955, p. 1410, HB No. 277] provides in pertinent part: "Whoever violates this Act by possessing, having under his control, manufacturing or compounding any narcotic drug shall be fined for the first offense not more than $5,000.00 or be imprisoned for a period of not less than 1 year nor more than 5 years, or both. For any subsequent offense the violator shall be imprisoned in the penitentiary for any term from 2 years to life. Any offense under this Act shall be deemed a subsequent offense if the violator shall have been previously convicted of an offense under this Act or of a felony under any law of the United States of America, or of any State or Territory or of the District of Columbia relating to narcotic drugs."